ABRAHAM RICHSTAIN *vs.* WASHINGTON MILLS COMPANY.

Essex.      November 1, 1892. — January 4, 1893.

Present: FIELD, C. J., KNOWLTON, MORTON, & BARKER, JJ.

*Personal Injuries — Dangerous Machine — Instructions to Servant — Evidence.*

In an action for personal injuries against a mill corporation, it appeared in evidence that during the interval between his arrival in this country and the date of the accident the plaintiff had become familiar with the use of machinery; that he was thirty-two years old when injured, and at the trial about a year thereafter spoke English so as to testify without an interpreter, and was of ordinary intelligence; that the machine on which he was working was simple in construction and operation, and neither out of repair nor wanting in any appliance; that he was set to work with a fellow servant who was running it, and helped him start it; that the fellow servant went away, saying nothing to the plaintiff, who supposed the man would return, though he did not know, and while attempting .to operate the machine as he had seen his fellow servant operate it he was injured. *Held*, that neither the defendant nor any of its superintendents were negligent in not warning or instructing him concerning it.

In an action for personal injuries sustained by an employee in a mill, evidence of declarations made by the overseer in charge of the room in which the plaintiff worked immediately after the accident, and while the plaintiff was lying on the floor after being removed from the machine, in the nature of admissions of negligence on the part of the overseer in relation to the accident, is inadmissible.

TORT, for personal injuries occasioned to the plaintiff while in the defendant's employ.

At the trial in the Superior Court, before *Hammond*, J., there was evidence tending to show that at the time of the accident the plaintiff was thirty-two years of age; that he came to this country from Russia in 1888, and for about eighteen months

before entering the defendant's employ had worked in various employments, some of which required the use of machinery; that when he went to work in the defendant's mill he was put at work by an overseer of the defendant in the dye-house upon what is called a "kettle," and had worked at that work, and upon similar machines called "washers," down to the time of the accident; that a "kettle" consisted of a large wooden vat, in which the defendant put pieces of cloth where they were subjected to the action of hot water and steam; that in the same room, separated by an aisle about twenty feet in width, were machines called "jiggers"; that while working in this room he saw one Cronin taken from a jigger in which he was caught, but did not know how Cronin was caught, and made no inquiries; and that he did not go over to Cronin, did not know or see that he was caught in the roll, did not talk with anybody about it then or afterwards, and did not hear it talked about among the men.

There was nobody there who spoke his language. He could then speak English to some extent, and testified at the trial without an interpreter. He had to go up and down the aisle with trucks, and could see the men at work on the jiggers, but testified that he did n't see them. At about ten minutes past six in the morning of January 3, 1891, as the plaintiff was about to start at work upon the kettles, an overseer of his work directed him to go to work with one Crowley upon one of the jiggers. The plaintiff had never worked upon a jigger before, had never examined one, nor watched its operation, except as he had seen jiggers in use while he was at work at his kettle. He testified that he did not know, appreciate, or understand that there was any danger in the operation of a jigger. When he got to the jigger, under the direction of Crowley he washed it out; fresh water was put in, and some sumac for dyeing. Near by the jigger was a truck, on which there was a mass of cloth made up of several pieces of thirty-five or forty yards each, the ends of which were sewed together so as to form one continuous piece. Crowley then started up the jigger, and, throwing one of the ends of the strip over a revolving roller, held the end up in under the roller with the fingers of both hands, the palms of which were upward, so that the cloth would catch upon the roll.

When the strip was wound on to the roll, he passed the other end down through the liquor in the bottom of the vat under another roller, thence carried it through the liquor and under another roller in the bottom of the vat, and then pulled it up out of the liquor, and threw the end over the revolving roller at the other end of the jigger, and it was caught and rolled on to the roller. The purpose of a jigger is to wind and rewind the cloth from one roller to another several times through the liquor. After Crowley had started the cloth so that it was winding upon the last mentioned roller, he went away, leaving the plaintiff at the jigger. He did not know where Crowley went, did not know whether he was coming back or not, but thought he was. Crowley said nothing as he went away. When the cloth was almost all wound upon this roller, the plaintiff stopped the machine, and, knowing that the cloth ought to be sent back again through the liquor, pulled a lever which reversed the motion of the rollers, and attempted to cause the loose end of the cloth to catch upon the revolving roller by tucking the end up in under the roller, and between the roller and the cloth, as he had seen Crowley do in the first instance. While doing so, his fingers were caught, and his arm was drawn between the cloth and the roll, fracturing it and causing other injuries. The accident occurred at about seven o'clock in the morning. The plaintiff was not cautioned or instructed as to the danger of a jigger by anybody, and had derived no knowledge of its danger from any source. One Todd was the overseer in charge of the room in which the plaintiff worked. The plaintiff offered to show declarations made by Todd immediately after the accident, and while the plaintiff was lying on the floor after being removed from the machine, in the nature of admissions by Todd of negligence on his part in relation to the plaintiff's accident. This evidence was excluded by the court, and the plaintiff duly excepted.

The judge directed a verdict for the defendant; and the plaintiff alleged exceptions.

*J. P. Sweeney*, for the plaintiff.

*C. A. De Courcy*, for the defendant.

MORTON, J. It is evident, from the account which he gives of his occupations during the interval between his arrival in this

country and the date of the accident, that the plaintiff had become familiar with the use of machinery. He was thirty-two years old when injured, and at the time of the trial, which was about a year after the accident, spoke English so as to testify without an interpreter, and was of at least ordinary intelligence. The machine on which he was working was simple in construction and operation. He does not claim that it was out of repair, or wanting in respect to any appliance. He was set to work on the morning of the accident with one Crowley, who was running it, and helped him start it up. After it was started, Crowley went away, saying nothing to the plaintiff, who supposed he would return, though he did not know. The plaintiff knew that the cloth was to be wound and rewound back and forth through the liquor in the bottom of the vat on to the rollers at the ends of the machine. When the cloth was almost all wound on to the roller on which it was winding when Crowley went away, the plaintiff, without any direction from any one, reversed the motion of the rollers, and attempted to make the loose end of the cloth catch upon the roller at the opposite end by throwing it over the roller and tucking the end up under between the roller and the cloth, as he had seen Crowley do. While doing this his fingers were caught, and his arm drawn in between the roller and cloth, causing the injury complained of.

If we assume that it was a part of the plaintiff's duty to keep the machine going, we still think that the risk accompanying what he did was of such a character that, taking his age, intelligence, and experience into account, he might be fairly supposed to understand and appreciate it, and that therefore neither the defendant nor any of its superintendents were negligent in not warning or instructing him concerning it. *Ciriack* v. *Merchants' Woolen Co.* 146 Mass. 182, and 151 Mass. 152. *Crowley* v. *Pacific Mills,* 148 Mass. 228. *Coullard* v. *Tecumseh Mills,* 151 Mass. 85. *Pratt* v. *Prouty,* 153 Mass. 333. *Tinkham* v. *Sawyer,* 153 Mass. 485. *Brady* v. *Ludlow Manuf. Co.* 154 Mass. 468. *De Sousa* v. *Stafford Mills,* 155 Mass. 476.

The declarations of Todd were rightly excluded. *Boston & Maine Railroad* v. *Ordway,* 140 Mass. 510. *Williamson* v. *Cambridge Railroad,* 144 Mass. 148. *Leistritz* v. *American Zylonite Co.* 154 Mass. 382.          *Exceptions overruled.*