KATE TOY *vs.* UNITED STATES CARTRIDGE COMPANY.

Middlesex.   March 9, 1893. — June 21, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Defective Machine — Master and Servant — Negligence — Evidence.*

The obligation of a master to see that a machine on which his servant is set to work is in a safe condition, and suitable for the purpose for which it is used, applies to all of its parts; if some of its parts, by reason of its construction and operation, require frequent replacement, such parts, when adjusted in the machine, become as much a part of it as if included in its original construction, and a defect in one of them is a defect in the machine; and the duty of seeing that such parts are not defective is one incumbent on the master, who, if he delegates the duty to persons whom he believes to be, and who are in fact, competent to perform it, is liable for an injury to his servant resulting from their negligence in failing to discover, by the exercise of reasonable care, a defect in such replaced parts of the machine.

In an action for personal injuries occasioned to the plaintiff, a woman, while in the defendant's employ, by the breaking of a punch in a cartridge machine which she was operating, she testified that she was required to examine the cartridge shells from time to time to see if they were scratching; that, on the day of the accident, she found that they were scratching, and informed the foreman of it, and he sent for A., the second hand, to look after the machine; that A. took out the dies and punch, and put in new dies and a new punch, and then told the plaintiff to start the machine by a signal, which she did; that the first time the punch went down through the plate and dies all right, there being no shell, but the second time it broke, and caused the injury complained of; that, before she started the machine, she saw a small black mark extending half-way round the punch about in the middle of it; and that "she did not know what this black mark meant, but that it looked like a knitting needle that had gone rusty and black." There was also testimony tending to show that the punch

broke in the middle; and some of the witnesses testified that they never knew before of a punch breaking in the middle, but that they usually bent or broke at the point. It also appeared that, after the accident, the broken punch was examined by the foreman and A.; that the former passed it to B., who was the defendant's agent and superintendent, and who examined it and passed it back to the foreman, who threw it away; and that the only other person who appeared to have seen it was a woman, who worked on a machine near the plaintiff, and who testified that she "could see that it [the punch] was broken in one place in the middle," but that "she did not know what the condition of the broken surfaces were, as the foreman sent her to her work." The foreman and A. testified that they saw nothing the matter with the punch. B. testified that, though he found, on examining it with a microscope, there was a flaw in it, the flaw did not extend to the outside; that he did not think it was possible to have discovered the defect which he saw on the inside of the punch; that, in his judgment, the flaw which he found was not sufficient to have caused the defect; and that bad punches were usually thrown away. The material from which and the manner in which the punches were made, and the system of inspection adopted by the defendant, were in evidence. There was also testimony that, if there was a crack on the outside, it might be filled up in polishing or in turning down the punch. *Held*, that the case should have been submitted to the jury.

In an action for personal injuries occasioned to the plaintiff, while in the defendant's employ, by the breaking of a defective punch in a machine which she was operating, the plaintiff offered to show that, at a former trial of the case, the defendant's agent and superintendent, who was called as a witness by the defendant, testified, on cross-examination, that the flaw in the punch might have extended to the outside, and that it might have been discovered. *Held*, that the evidence was rightly excluded.

TORT, for personal injuries occasioned to the plaintiff, while in the defendant's employ, by the breaking of a punch in a cartridge machine which she was operating. Trial in the Superior Court, before *Hopkins*, J., who, at the defendant's request, directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions. The facts appear in the opinion.

The case was argued at the bar in March, 1893, and afterwards was submitted on the briefs to all the judges.

*P. J. Hoar*, for the plaintiff.

*J. C. Burke*, for the defendant.

MORTON, J. There is no doubt that there was evidence for the jury on the question of the plaintiff's due care. Indeed, the defendant does not argue that there was not. The real question is whether there was any evidence of negligence on the part of the defendant. It was the duty of the defendant, in the exercise of reasonable care, to see that the machine on which the plaintiff was set to work was in a safe condition, and was suitable for the purpose for which it was used. This obligation applied to all its

parts.  The punch formed a part of it.  *Rice* v. *King Philip Mills*, 144 Mass. 229.  It was fitted to and inserted in it, was necessary to its use, and was furnished by the defendant for use in it, and as a part of it.  A machine may be so constructed, and its operation may be such, as to call for a frequent replacement of one or more of its constituent parts.  Such parts when adjusted in the machine become as much a part of it as if included in the original construction, and a defect in one of them is a defect in the machine.  The duty of seeing that such parts are not defective is one incumbent on the master.  It is not a matter of ordinary repair from day to day, which may be intrusted to a servant. The defendant could not therefore avoid responsibility by delegating this duty to persons whom it believed to be competent, and who were in fact competent to perform it.  If the injury to the plaintiff was due to a defect in the punch, which might have been discovered by the exercise of reasonable care on their part, but was not, the defendant is liable for their negligence.  *Moynihan* v. *Hills Co.* 146 Mass. 586, 592, and cases cited.

The plaintiff testified that she was required to examine the cartridge shells from time to time to see if they were scratching ; and that on the day of the accident she found that they were scratching, and informed the foreman of it, and he sent for one McParland, the second hand, to look after the machine.  McParland took out the dies and punch and put in new dies and a new punch, and then told the plaintiff to start the machine by a signal, which she did.  The first time the punch went down through the plate and dies all right, there being no shell; but the second time it broke and caused the injury complained of. The plaintiff further testified that before she started the machine she saw a small black mark extending half-way round the punch about in the middle of the punch ; and in further description of it said " that she did not know what this black mark meant, but that it looked like a knitting needle that had gone rusty and black."  There was also testimony tending to show that the punch broke in the middle, and some of the witnesses said that they never knew before of a punch breaking in the middle, but that they usually bent or broke at the point.  It also appeared that after the accident the broken punch was examined by the foreman and McParland ; that the former passed it to one Dimon,

who was the defendant's agent and superintendent, and who examined it and passed it back to the foreman, who threw it away ; and that the only other person who appeared to have seen it was a woman who worked on a machine near the plaintiff, and who testified that she " could see that it [the punch] was broken in one place in the middle," but that " she did not know what the condition of the broken surfaces were, as the fore-man sent her to her work." We think it would have been competent on this evidence for the jury to find that there was a defect in the punch in the middle, and that the break in the middle was due to it. It is true that the foreman and McParland, who were called as witnesses by the defendant, testified that they saw nothing the matter with the punch, and that Dimon, who was called by the plaintiff, testified that, though he found on examining it with a microscope there was a flaw in it, the flaw did not extend to the outside, and that he did not think it was possible to have discovered the defect which he saw on the inside of the punch, and that, in his judgment, the flaw which he found was not sufficient to have caused the defect. He also testified that bad punches were usually thrown away. But the weight to be given to all this evidence was clearly for the jury. We cannot say that there was no evidence of a defect in the punch, or that, if there was one, there was no evidence that the accident was not caused by it.

It was also a question for the jury, under all the circumstances, whether the failure to discover the defect, if there was one, was due to negligence on the part of the defendant, or of those charged by it with the duty of making and examining the punches. The material from which and the manner in which the punches were made, and the system of inspection adopted by the defendant, were all before the jury, and it was for them to say whether they were all that reasonable care required, or whether a more careful inspection should have been made, and whether, if it had been made, the defect would have been discovered. There was testimony that, if there was a crack on the outside, it might be filled up in polishing or in turning down the punch. It was for the jury to say also whether the defect, if there was one, was such that failure to discover it afforded evidence of negligence on the part of the person or persons charged with the duty of making or inspecting the punch.

The testimony as to what Dimon said at the former trial was rightly excluded on the ground on which it was evidently offered.* *Richstain* v. *Washington Mills*, 157 Mass. 538.

A majority of the court is of opinion that the entry must be,

*Exceptions sustained.*

---

* Dimon, who was called as a witness by the defendant at the former trial, testified, on cross-examination, that the flaw in the punch might have extended to the outside, and that it might have been discovered.