## CLARENCE M. CRAWFORD *vs.* THE UNITED RAILWAYS AND ELECTRIC COMPANY.

*Master and Servant—Duty of Master to Inspect Appliances for Work—Evidence of Negligence.*

It is the duty of the master to see that the appliances with which his employees are required to work are maintained in a reasonably safe condition; and the duty of inspecting such appliances cannot be properly discharged without providing some system of inspection; and no system can be regarded as adequate which does not provide for timely inspection, and for safe custody of the thing inspected during any substantial interval between its inspection and its use.

Plaintiff was a conductor on an open summer car of defendant's street railway, and in stepping down from the rear platform to the foot-board, the handhold on the side of the car, which it was necessary for him to

use, broke, and he was thrown to the ground and injured. Plaintiff took the car out from the terminus at 6 o'clock on the morning of the accident and in making the first run outward used only the grip handles on one side. On the return trip the trolley was reversed and the foot-board and the hand holds on the other side of the car were used. Plaintiff did not have occasion to get on the rear platform until near the end of the return trip, when the accident occurred. During these runs there was no collision or contact of the car with any obstacle. The handle was attached to the car by screws through a plate, and there was no visible defect in it before it broke with the plaintiff. Afterwards it was found that the post to which the bar was attached was cracked near the bottom of the plate, one screw was broken off and the other bent. This car with others had been left over night on a track in the street, and ·was assigned to plaintiff from that position. It was customary for the defendant to leave some of its cars in the street, when there was not room enough in the car barn. Defendant's inspector testified that he had inspected this car at 2:30 o'clock in the night before it was used, and that he tested each grip handle by swinging his weight on it. But after this inspection the car had been left in the street for several hours unlighted and unguarded, subject to the risk of injury from collision with passing vehicles or from wanton mischief. There was no evidence that the defendant had adopted or enforced sufficient rules for the inspection of its cars, and there was proof that it was usual for some of the cars to be left over night on a track in the street. *Held*, that the failure of the defendant to enforce proper rules for the inspection and custody of its cars was negligence which entitled the plaintiff to recover if it was the cause of his injury; that the evidence is sufficient to authorize the jury to find that the handle bar was broken while the car was exposed in the street, and that question should have been left to their finding; and that it was not necessary for the plaintiff to show how the injury to the handle bar occurred.

*Held*, further, that in the absence of affirmative proof by the defendant, the jury are authorized to assume that the car had been left in the street unlighted and unguarded after the inspection.

Appeal from the Superior Court of Baltimore City (WICKES, J.)

*Plaintiff's 1st Prayer.*—If the jury find that the plaintiff was employed by the defendant as a conductor on one of its street railway cars and that it was the duty of the plaintiff under said employment, on each trip, at a certain part of the line, to step while the car was in motion from rear platform to foot-board and go along the foot-board to the front of the car, where was situated the indicator which registered the fares of

each trip, and insert said fares so shown by said indicator in a manifest which was to be delivered to an agent of the defendant at the close of the service for the day, if they so find, and further find that the only mode provided by the defendant in the construction of the car for the plaintiff to step from the rear platform to said foot-board, was a metallic hand hold attached to a post of said car with screws, as explained in the testimony of plaintiff's witnesses, if they so find, and further find that on September 16th, 1903, the plaintiff on his first trip that day with the car then furnished him as such conductor by the defendant, in attempting, at the proper part in the line of his route, and in performance of his said duty and while himself using ordinary care, to step from the rear platform to the foot-board, the said hand hold which he had taken hold of gave way, because of defective and unsafe attachment of said hand hold to the part of said car, as testified by the witnesses for the plaintiff, if they so find, and threw the plaintiff upon the pavement of the street and injured him and that said defective and unsafe attachment of said hand hold was not known or plainly observable by plaintiff, if they so find, then the plaintiff is entitled to recover in this suit and the verdict of the jury should be for the plaintiff; provided the jury find that said hand hold was defectively and unsafely attached to the post of said car, as testified by plaintiff's witnesses, at the time the plaintiff was put in charge of said car as said conductor by the defendant and did not occur on said trip before said accident, if they so find; and that the defendant had notice of such defective and unsafe attachment of said hand hold to the post of said car in time to repair it before the injury, or could or should have known of such defects, had reasonable care been taken to properly inspect and maintain the same in repair. (*Refused.*)

*Plaintiff's 2nd Prayer.*—The Court instructs the jury that it was the duty of the defendant to exercise ordinary care to provide a reasonably safe place in which the plaintiff might perform the service which he was employed, as a conductor of one of its cars, to perform for said defendant; and if the jury

find that the plaintiff under his employment as conductor by the defendant had, in the performances of his duty aforesaid, to pass from rear platform to foot-board and that the hand hold which was the only means if they so find, provided by the defendant for the plaintiff to use in passing from rear platform to foot-board was defectively and unsafely attached to the post of the car and not known and plainly observable by the plaintiff, and that the plaintiff in attempting to pass from the rear platform to foot-board, while using ordinary care, if they so find, was thrown by the said hand hold giving away because of said defects, to the pavement, and injured, then the verdict of the jury must be for the plaintiff; provided the defendant by the exercise of ordinary and reasonable care could or ought to have discovered said defects in said hand hold in time to remedy said defects by repairs or otherwise. (*Refused.*)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Thomas G. Hayes* (with whom was *Daniel B. Chambers* on the brief), for appellant.

I. The granting of appellee's second prayer was manifest error. Constructive notice is the legal equivalent of actual notice. *Conners* v. *Durite Mfg. Co.*, 156 Mass. 163, 30 N. E. 559; *Walkowski* v. *Penokee, etc., Mills,* (Mich.) 41 L. R. A. 33, note; 2 *A. & E. Eng. Law,* 582; *M. & C. C. Balto.* v. *Whittington,* 79 Md. 231.

II. The uncontradicted evidence conclusively establishes that the proximate cause of the injury complained of was the wrongful, illegal and negligent permitting the car in question to stand all night unguarded, unwatched and without lights on a public street, because of a want of storage room in the street railway's car barn, and that between 2:30 A. M., when the car in question received its only and final inspection and 6:09 A. M. when said car was put into service, the hand hold which broke as the conductor attempted to step from rear

platform to foot-board, was broken by a collision between said
hand hold and a vehicle passing along the street in the dark-
ness of the night. 15 *A. & E. Ency. Law*, 501; *Jenkins* v.
*B. & O. R. R. Co.*, 98 Md. 402, 404; *W. Va. Central R. Co.*
v. *Fuller*, 96 Md. 673; *Md. Steel Co.* v. *Marney*, 88 Md. 495;
*Brauer* v. *Balto. R. & H. Co.*, 99 Md. 367; *Frankle* v. *Jack-
son*, 30 Fed. Rep. 398; *Southern P. R. Co.* v. *Lafferty*, 15 U.
S. App. 201; *Smith* v. *New York, &c., R. Co.*, 46 N. J. Law, 7.

III. The appellee was negligent in failing to provide a
proper system of inspection of the hand hold on the cars
which stood all night on a public highway unguarded, un-
watched and without lights. The duty to provide this proper
system of inspection was a non-assignable, positive duty, which
the master could not escape by delegating the same to a fel-
low servant. 20 *A. & E. Ency. Law*, 88; 12 *A. & E. Ency.
Law*, 959; *Nellis Street Railroad Accident Law*, 425; *Abel* v.
*Delaware, &c., Canal Co.*, 103 N. Y. 581; 9 N. E. 325; *Warn*
v. *New York, &c., R. Co.*, 29 N. Y. Sup. 897; *Ingebrightsin* v.
*N. G. L. S. Co.*, 57 N. J. Law, 400; 31 Ath. 619; *Foy* v. *U.
S. Cartridge Co.*, 159 Mass. 313, 34 N. E. 461; *Palmer* v.
*Canal, &c., Co.*, 120 N. Y. 170, 24 N. E. 302; *Braun,* v.*Chi-
cago, &c., R. Co.*, 53 Iowa, 595, 6 N. W. 5; *Coffee* v. *New
York, &c., R. Co.*, 155 Mass. 21, 28 N. E. 1128; *Smith* v.
*Baker*, 1891, L. R. 16 App. Case, 353; *Turney* v. *Minneapolis
R. Co.*, 3 Minn. 311, 23 N. W. 229; *Nolan* v. *New York, &c.,
R. Co.* (Conn.) 43, L. R. A. 305, and note; *Schroeder* v.*Chi-
cago, &c., R. Co.* (Mo.), 18 L. R. A. 827, and note.

IV. There was a reasonable probability that a car standing
all night on a public highway unguarded, unwatched and with-
out lights, would be run into in the darkness by a passing
vehicle and its hand hold broken as was done in the case at
bar. *Sinclair* v. *M. & C. C. Balto.*, 59 Md. 592; *Ryan* v. *Los
Angeles Ice Co.*, 32 L. R. A. 524; *City P. R. Co.* v. *Turner*,
90 Md. 319; *Chicago, &c., R. Co.* v. *Elliott*, 12 U. S. App.
387; *Hoag* v. *Lake Shore, &c., R. Co.*, 85 Penn. St. 293, 298;
*Wolf* v. *District of Columbia*, 196 U. S. 152, 157; *Washing-
ton Turnpike* v. *Case*, 80 Md. 45; *Kramper* v. *St. Louis B.*

*Company*, 59 Mo. 272, 281; *McGovern* v. *Central R. Co.*, 123 N. Y. 280.

V. The furnishing of a car with a broken hand hold, to be used by the conductor in stepping from rear platform to footboard was a violation of the positive, non-assignable duty of master to furnish the servant with a reasonably safe place in which to do his work. *National Enameling Co.* v. *Cornell*, 95 Md. 524, 528; *Western Coal Co.* v. *Ingraham*, 36 U. S. App. 10; *Grace & Hyde* v. *Kennedy*, 40 C. C. A. 69; *Baird* v. *Rulley*, 35 C. C. A. 78; *Northern P. R. Co.* v. *Peterson*, 162 U. S. 353; *Dewey* v. *Detroit R. Co.* (Mich.), 22 L. R. A. 292; *Byrnes* v. *New York R. Co.* (N. Y.), 4 L. R. A. 155; *Martin* v. *Atchison R. Co.*, 166 U. S. 399, 403; *Hardy* v. *Spedden Co.*, 47 U. S. App. 365, *Settle* v. *St. Louis R. Co.*, 127 Mo. 336; 30 S. W. 125; *Wilkowski* v. *Penokee Mines*, 41 L. R. A. 46, and note; *Texas R. Co.* v. *Wisner*, 66 Tex. 674, 2 S. W. 667; *Gutridge* v. *Missouri R. Co.* (Mo.), 16 S. W. Rep. 943; *Branns* v. *Chicago R. Co.*, 53 Iowa, 595, 6 N. W. 5.

*Geo. Dobbin Penniman* and *J. Penbroke Thom* (with whom was *Fielder C. Slingluff* on the brief), for the appellee.

The opinion in *Wonder* v. *B. & O. Railroad*, 32 Md. 416, covers the law applicable to this case so thoroughly, and the facts in that case are so similar to the facts in the case at bar, that it might well be imagined on reading the decision in the Wonder case, that the Court was dealing with the very case at bar. See also *Hanrathy* v. *N. C. R. Co.*, 46 Md. 281; *State use of Hamelin* v. *Malster*, 57 Md. 307; *South Balto. Car Works* v. *Schaefer*, 96 Md. 88.

In the case at bar the railway company, as master, was bound to supply originally a car which was properly constructed and safe; in addition, the master was bound to employ competent men to inspect the car and to remedy any defects which might develop either from wear and tear or from accidents. If the master failed in the performance of these obligations and the servant was thereby injured then the master would be liable, but the burden would be on the plaintiff to show such failure, and clearly there is no evidence in this

case that the appellee did not purchase a proper car or employ competent inspectors.

We submit that under the decisions of this Court in *O'Connell's case*, 20 Md.; *Shauck's case*, 25 Md.; *Wonder's case*, 32 Md.; *Yates* v. *McCullough Iron Company*, 69 Md. 370, and *Malster's case*, 57 Md. 287, even if the evidence showed (and clearly it does *not*) that the handle had been broken or become loose the night before the accident, and the night car repairer had failed to discover and repair the defects, that this oversight or negligence was solely the negligence of a fellow servant, for which the master is not responsible.

In order that the plaintiff should be entitled to a consideration of his case by the jury, he was compelled to show *as the burden was upon him :*

1. That the car was originally defectively or dangerously constructed and therefore was not a proper car for the defendant to purchase and supply to the plaintiff as a place upon which to work and that the defective handle bar was a part of the defective or dangerous construction of the car. Undoubtedly the case contains no proof to this effect. Or, 2. That the car, although originally good, was not maintained in good order because the defendant failed to maintain proper and careful employees to inspect and maintain the car and that the defendant knew or should have known of the faults of the said employees and yet retained them, and that the accident happened through the fault of such careless employees. Undoubtedly the case contains no proof to this effect. Or, 3. That the master knowingly or negligently exposed the servant to an extraordinary or unreasonable peril in the course of his employment which the servant did not assume as one of the risks of his employment, or from want of knowledge, etc., could not by the use of ordinary care guard himself against. Undoubtedly the case contains no proof to this effect. The plaintiff has utterly failed to show that the accident was caused by the negligence of the defendant. He has left the cause of the accident utterly unexplained. We may surmise that it was either caused by some blow from a passing wagon on the down

town trip which the plaintiff did not notice, or that it had been broken the night before and the plaintiff's fellow servant, the night car repairer, failed to notice it.   The jury should not be permitted to so surmise, but even if there was evidence legally sufficient to warrant the jury in adopting either theory, yet the defendant would not be responsible, for under neither theory is it guilty of negligence.

Can the jury be permitted to assume *how* the handle bar was broken from the evidence in this case, apart from any question of negligence on the part of the appellee, if this fact should be proved.

The clear burden of proof was upon the appellant to show that the handle bar was broken under such circumstances as would make the appellee responsible for the condition of the car.   Do the assumptions of the appellant measure up to this obligation?   No Court anywhere has taken a firmer position than this Court upon the enforcement of the rule that an assumption cannot be passed off as proof of a fact.   "In matters of proof we are not justified in inferring from mere possibilities the existence of facts." *Savington's case,* 71 Md. 599; *Baltimore and Potomac R. R. Co.* v. *State, use of Abbott,* 75 Md. 152; *B. & O. R. Co.* v. *Good,* 75 Md. 526; *N. C. Ry. Co.* v. *State, use of Burns,* 54 Md. 113; *State, use of Miller* v. *B. & O. R. R. Co.,* 58 Md. 221; *State, use of Bernard* v. *P., W. & B. R. R. Co.,* 60 Md. 555; *B. & O. R. R. Co.* v. *State, use of Allison,* 62 Md. 479; *Benedick* v. *Potts,* 88 Md. 52; *Brady* v. *Gas Co.,* 85 Md. 637; *South Balto. Car Works* v. *Schaefer,* 96 Md. 105; *Md. Tel. Co.* v. *Cloman,* 97 Md. 620; *State, use of Charles* v. *United Rys. & Elec. Co.,* 101 Md.

The leaving of the car on the dead track from 2:30 A. M. until it went out at 6.09 A. M., was no evidence of negligence. A street railway company has just as much right to leave its cars in the street over night as a farmer would have to leave his wagon or carriage upon his own side of the highway. *Kaumeir* v. *City Elec. Co.,* 116 Mich. 313–4; *Nellis on Street Surface Railways,* 322.

But if the accident happened because the car was standing

on a dark street at night "unguarded, unwatched and without lights," was not the burden upon the plaintiff to show this? If the defendant's negligence consisted in permitting the car to stand on the dark street, must not the plaintiff *prove* this negligence? Can it be said that because the defendant says it was compelled to put a certain number of its cars on a track in front of one of its largest barns at night and *there* inspect them and get them ready for next day's work, *that proof of this fact raises the presumption* that such cars were "unguarded, unwatched and without lights?" Does not proof of this fact raise the presumption that those cars must have been the centre of a great deal of activity and work during each night? The appellant admits that the inspection was properly done at 2.30 A. M., but he wants to prove that the car was not properly protected after that time, and that thereby the handle was broken. Must not *he* prove that the car was not properly protected?

The appellant assumes that there was such a possibility of a collision between the car and a passing vehicle, that the mere proof of the standing of the car on the street at night is sufficient to warrant the jury in assuming that the handle bar was broken in this way, and that the appellee was negligent in not ordering a re-inspection of the car just before it was given to the crew. We submit that the burden was upon the plaintiff to show the alleged lack of light on Retreat street at this point at night; the narrowness of the street; the amount of traffic on the street, and the difficulty of seeing a car standing on the dead track. The plaintiff does not meet this responsibility in the slightest, and we believe has therefore utterly failed to present any evidence from which the jury could find that the street was dark and the traffic heavy, and therefore an accident so probable that to start the car out at 6.09 A. M., without a new inspection, was negligence on the part of the defendant.

PEARCE, J., delivered the opinion of the Court.

This suit was brought for the recovery for personal injuries

sustained by the plaintiff while in the discharge of his duties as a conductor upon one of the cars of the defendant company. The car in question was an open summer car with nine seats for passengers running across the car, and with a foot-board upon each side used by passengers in entering and leaving the car, and by the conductor in taking up the fares, that being the only means of passing from one end to the other while the car was in motion. The plaintiff's injuries were caused by the breaking of a hand hold attached to the side of the car, and provided for the use of the conductor in stepping up and down from his position on the rear platform to the foot-board, it being necessary for him to use this particular hand hold for that purpose. There were a number of other similar hand holds to aid passengers in entering and alighting, and to aid the conductor in passing along the foot-board. When he first used this particular hand hold to step down from the platform on that morning, it pulled off and he was thrown violently into the street and received severe injuries to his knee and back.

On the morning of the accident, September 16th, 1903, the plaintiff was assigned by one of the officers of the company to car No. 275, and left the northern terminus of that line at Druid Hill Park at six o'clock for the first run of the day to the southern terminus at Fort McHenry. This run was made without incident, the car running on the right or west track going south and the foot-board and grip handles on that side of the car next the pavement being exclusively used until Fort McHenry was reached. There the trolley was reversed, the rear end of the car became the forward end, and the foot-board and the grip handles on the right or east side of the car going north on the east track, being next to the pavement, were exclusively used until Druid Hill Park was reached. The plaintiff testified that during the return trip from Fort McHenry to Druid Hill Park he was on the foot-board, but did not have occasion to go and did not go, upon the rear platform until he was approaching and near the car barn, when he stepped up as he was required to do upon the rear platform to get his manifest which is kept there, for the purpose of

going to the register in the forward end of the car to enter upon the manifest the fairs registered in the run up. That during the run up, and while on the foot-board, he used every grip handle on that side of the car except that at the rear platform, but did not use that until he attempted to step with his manifest from the rear platform to the foot-board, when it pulled off and threw him down upon the street as stated; that in stepping up on the platform he used the post to which the handle was attached, but in stepping down he could not use the post, and was obliged to use the handle; that the step down from the platform to the foot-board was about eighteen inches and the foot-board about eight inches wide; that the handle was attached to the post by two screws through a plate at the bottom, and ran through a socket at the top, and that there was no visible defect in the handle or its attachment before the accident, and that he had never, to his knowledge, used that car before; that the car when assigned to him, was not in the car barn, but was upon a track on the street, called the *dead track.* He also testified positively that there was no collision or contact with any obstacle, either during the run to Fort McHenry, or on the return run to Druid Hill Park.

Lawrence Hayden testified that on the morning of the accident he was in front of the car barn on the corner of Retreat and Francis streets, and as the car was approaching the barn, saw the plaintiff step down from the rear platform, and as he stepped, he went headlong in the street between the curb and the track; that he got up and hobbled down on one leg with the handle bar in his hand; that he (witness) examined the car a few moments later, and found that the post to which the handle bar was attached, was cracked near the plate at the bottom of the handle; that there was one bent brass screw still in the handle, and one screw was broken off and the handle bar had a dent or bend, in the lower part. This witness was at that time a conductor on the defendant's line. This was the plaintiff's case.

Dennis Sheehan, the superintendent of this line of cars, testified for defendant, that instructions for conductors and mo-

tormen were posted in the car barn, and that they are required
to report any accident or defect in a car, when it is turned in
at night; that he received no report the previous night that
this car was out of order, and knew nothing of any defect in
it, until after this accident; that there was a night inspector
whose duty it was to examine all cars turned in at night, be-
fore being put in service in the morning, and if any defect is
found, to hang a shop sign on the car showing it is not to be
taken out.

The motorman in charge of car No. 275, the night previous
to this accident testified that he finished his run at one o'clock
at night, and turned in this car in perfectly good condition for
service.

Hubbard, foreman of the car barn at that time testified that
it was Kenny's duty to inspect every car in the barn, and
every car on the *dead track* at night and report the result to
him in the morning, and that he received no report of any de-
fect in car No. 275. He also said, "sometimes when the cars
are not put in the barn, they stand on that dead track. When
the barn does not hold them, or for any reason, we want a
supplemental place to leave them, we place them on these
*dead tracks.* I have seen as many as a dozen there over
night. It is usual for cars to be on the *dead track;* if we have
room enough in the barn we don't use the *dead track.* All
the cars go in, and when the barn is full we leave them on
that track; there is room in the barn for the cars that come in
early, and the last cars coming in at night are those that stay
on the dead track."

Kenny, the inspector, testified that he was on duty the
night of September 15th, 1903, and inspected every car in the
barn and on the street; that he inspected car No. 275 and
found it in good condition, at 2.30 A. M., and that he used a
lamp with a reflector, which shows him any object or part of
the car he wants to see and that if there is any defect he is sure
to see it. That in the barn they do not need and do not use,
this lamp, and use it only on the street; that there were
twelve cars on the street that night, all of which he inspected

after those in the barn. That in the course of his inspection he took hold of each grip handle on each car, and swung his weight with both hands on each handle, and tested in that manner *that* handle of this very car and was prepared to say there was no crack in that handle that night; that he was engaged in inspecting that night from seven o'clock until 4.30, and that during that time he swung his body on each handle of ninety cars, there being twenty-eight handles on each car. He said he saw the handle bar in question the night after the accident, and that it then "was like something had hit it when moving. The screws looked like it was broke out; it was not from the pull of the conductor, it was hit by something."

This closed the testimony, whereupon the plaintiff offered three prayers which were rejected, and the defendant offered two which were granted, as follows: "The Court instructs the jury that there is no legally sufficient evidence in this case to entitle the plaintiff to recover, and therefore their verdict must be for the defendant." 2nd. "The Court instructs the jury that the defendant could delegate the duty of the inspection of the car, and as it appears from the uncontradicted evidence that the defendant appointed an inspector, and as there is no evidence that he was incompetent, there could be no recovery in this case, unless the jury should find that the defendant had actual notice of the defect before the accident, and as there is no evidence of actual notice of the defect before the accident, the verdict must be for the defendant." The plaintiff's first and second prayers are framed upon the theory that it was defendant's duty to provide a car safe in every respect, *at the time* when plaintiff was assigned to it, and that if it was not, *at that time*, a reasonably safe place for the performance of the duties required of the plaintiff, and defendant knew, or might have known, this, in time to make it safe, if reasonable care had been taken to inspect the car at a proper time and place— or to protect the car from injury in the interval between the inspection, and its assignment to the plaintiff as a place for him to work on, then the plaintiff was entitled to recover.

The plaintiff's third prayer was the usual prayer as to dam-

ages where the case goes to the jury, and needs no consideration, but we shall request the reporter to set out the plaintiff's first and second prayers in full.

The case was ably argued, and the appellee relied mainly upon three leading cases in Maryland upon the law of master and servant, viz: *Wonder's case*, 32 Md. 416; *Hanrathy's case*, 46 Md. 281; *Hamelin's case*, 57 Md. 307, as conclusive; and, if in the present case, the master can be held to be free from negligence in the performance of any positive non-assignable duty, causing the plaintiff's injuries, and these can be held to be exclusively due to negligence of the car inspector in the discharge of his delegated duty, then it must be conceded there was no error in the ruling on the prayers, for the reasons assigned in the three cases above, and other decisions in Maryland which might be cited.

We have detailed all the evidence in the case at unusual length, in order that it may clearly appear why we think it does not fall within the class of cases illustrated by the decisions mentioned, and must be governed by other principles than those there applied.

Ever since the decision in *Wonder's case*, it has been settled in Maryland, that where injury was the consequence of the incompetency or neglect of a fellow servant, or where the evidence wholly fails to disclose the origin of the defect causing the injury, the master is not liable to his servant, it not appearing that he has been guilty of negligence, either in selecting the fellow servant, or in providing the machinery in which the defect occurred. It was settled also in this State, by the same decision, that all who serve the same master and are engaged in the same general business, though it may be in different grades and departments of it, are fellow servants, each taking the risk of the other's negligence. In that case, JUDGE ALVEY said, "It follows therefore that the brakeman on the train (the plaintiff) is in the same common employment with the mechanics in the shop to repair, and keep in order, the machinery, and with the inspector of the machinery *and rolling stock of the road*, and the superintendent of the moving of trains."

*Hanrathy's case* presents the same general features as in Wonder's *case*, and is governed by the principles there enunciated.

Hamelin's case when decided was thought by some to have strained the doctrine of Wonder's case, but in *Yates* v. *McCullough Iron Company*, 69 Md. 380, it was carefully considered, and sustained, and has since been frequently cited with approval by this Court.

In Hamelin's case the deceased was engaged in the erection of an iron bridge, under the direction of a skilled bridge builder who was superintendent of the work. His death was caused by the negligent use by the superintendent of a plank in a high scaffold, cut too short for safe use, and carelessly allowed to rest upon greased iron rails designed to support one of the bridge spans, instead of resting as it should have done upon the cross pieces of the scaffold, and a strenuous effort was made to discriminate that case from Wonder's case, but JUDGE ALVEY said: "All the cases agree in holding that there is no obligation on the part of the master to give his own personal supervision to the execution of the work, but that he may delegate that power to a superintendent or foreman and it is held by all the English cases, and by a decided preponderance of those in this country, that such superintendent or foreman, is a fellow servant within the rule, and that the omission or negligence of such superintendent or foreman is among the incidents of the service, and the risk of which the servant assumes upon himself, as between himself and the master, when he enters the employment."

It is not, and could not be, contended that there is any evidence in this case of the incompetency of the car inspector, nor indeed that he was guilty of any negligence in the mere inspection of this particular car on the night preceding the accident, and therefore we have said that if the defendant was free from negligence in the performance of any positive, non-assignable duty causing the plaintiff's injury, the ruling upon the prayers was correct, and this brings us to to the inquiry whether any such duty was neglected by the defendant.

In *Hamelin's case* the Court stated this qualification to the general rule there stated; "Where the middle man or superintendent, is entrusted with the discharge of duties incumbent upon the master, as between the master and the servant,.there the master may be liable for the omission or neglect of the manager or superintendent in respect to these duties, if the master relinquishes all supervision of the work, and entrusts this, and the instrumentalities necessary for the· service, to the judgment and discretion of the manager or superintendent, in such case the latter becomes a vice-principal, and for his omissions or negligence in the discharge of those duties, the principal will he liable." Therefore in *Moran's case,* 44 Md. 283,. where the power to select and purchase a locomotive was delegated to a general superintendent. and master of machinery,. the defendants were held liable for their negligence in the discharge of that duty. If, in this case, the defendant had provided no inspector of its cars, or had provided one who was. incompetent, he would have been liable for an injury resulting from want of inspection, or incompetent inspection because the duty of employing a competent inspector, who actually inspects, is a duty which the master cannot delegate. It is not enough that the master employs competent servants and furnishes them with proper facilities for performance of their duty. "He must exercise reasonable care and supervision over them and see that they do their duty." *Conner* v. *Durite Mfg. Co.,* 156 Mass. 163. And "when the business of the master is such that the safety of one servant depends upon\ the way in which other servants do their work, it is the duty· of the master to adopt, promulgate, and enforce reasonable and sufficient rules to protect and promote the safety of its. employees exposed to danger." *Nellis, Street Railroad Accident Law,* 425; 12 *Am. & Eng. Enc.* 959; *Abel* v. *Del. & Hudson Canal Co.,* 103 N. Y. 581.

The duty of inspection cannot be properly discharged, without providing some *system* of inspection, and no system can be fairly regarded as adequate which does not provide for *timely* inspection, and safe *custody* of the thing inspected during.

any substantial interval between its inspection and its use. The duty of providing a reasonably safe and efficient system of inspection, cannot from its very nature, be delegated to the inspector himself, but must be discharged by the master himself or by some one bearing to him the relation of vice-principal. As expressed in *Ford* v. *Lake Shore R. W.* (N. Y.) 12 L. R. A. 454, "A corporation is bound to carry on its business under a proper system, and if through a failure to establish such, a servant is injured, the corporation is liable. The master is responsible for his own negligence and want of care, and this may appear from his failure to make proper rules or establish a proper method of the conduct of his business. These are the master's duties and responsibility cannot be evaded by their delegation to agents. As to such acts the agent occupies the master's place, and the latter is deemed present and liable for the manner in which they are performed." To the same effect are *Toy* v. *U. S. Cartridge Co.*, 159 Mass. 313; *Palmer* v. *Canal Company*, 120 N. Y. 170; *Smith* v. *Baker*, L. R. 16 App. Cases, 353.

There is no evidence in this case that the defendant ever adopted, promulgated, or enforced any reasonable and sufficient system of rules for the inspection of its cars. Such a system, as we have already said, must have provided for careful inspection at a proper time and place, and for safe keeping after such inspection. There is evidence that Kenny's inspection of this car was careful and thorough, but in the absence of rules for his government, he was allowed to leave the car after inspection, for several hours of the night, unlighted and unguarded, subject to all the risk of injury arising from accidental collision with passing vehicles, or from deliberate and wanton mischief. Of what avail would be the most careful inspection of the instrumentalities necessary for the service, if, after inspection, these instrumentalities, for want of proper rules and regulations, were left unguarded in the public streets, exposed to the obvious dangers resulting from idle trespass or reckless malice? No one would hesitate to apply this reasoning to portable tools or appliances required to be used in the

service of the master, and there is no sound reason why it is not equally applicable to such an instrumentality as a street car. The circumstances under which this car was inspected do not present an isolated case in which there was a departure from established rules and regulations, unknown to the master, or of which he could not have known by reasonable diligence. On the contrary the uncontradicted testimony of the foreman of the car barn shows that whenever the barn did not hold the cars or for any reason it was desired to have a supplemental place to leave them, they were left in the street, and that it was *usual* for them to be left there. Not only was there no rule provided for the safe keeping of the cars after inspection, but the practice or custom was to leave some of them most of the time in an improper and unsafe place, and knowledge of this practice or custom must be attributed to the defendant. In our opinion the failure to provide proper rules and regulations for inspection, and the permitting of the practice shown, clearly constituted negligence of the defendant, for which the plaintiff is entitled to recover, if it was the cause of his injury. In *Frankle* v. *Jackson*, 30 Fed. Rep. 398, the Court said, "The right to use the streets for the running of trains gives no right to establish a repair shop thereon." And this Court in *Brauer* v. *Balt. R. & H. Co.*, 99 Md. 367, citing *Rex* v. *Russell*, 6 East. 427, said, "One could not eke out the inconvenience of his own premises by taking in the public highways." In *Southern Pac. R. R. Co.* v. *Laferty*, 15 U. S. Appeals, 201, it was said, "It is the duty of a railroad company to see that its locomotive engines, after the run, are left in a place of safety. If left where they are liable to be put in motion by the careless, negligent or willful act of outside parties, it is as much the duty of the company to see that they are properly guarded to prevent accidents from occurring, as it is to see that a sufficient number of employees are put on trains set in motion by its own orders;" and as a corollary from this, it follows that wherever the safety of a servant depends upon the inspection of some agency of the master, which is negligently exposed in an unsafe place after inspec-

tion, and before its use, the master will be liable for injury, resulting from such negligence.   It was contended by the appellee that there was no evidence these cars were unlighted or unguarded while left in the streets after inspection, and that it would have been error to permit the jury to make this assumption.   But in the absence of affirmative proof upon this point by the appellee, the presumption of law is that they were not lighted or guarded.   If any authority is needed for this natural inference it is found in *Jenkins* v. *B. & O. R. R.,* 98 Md. 404, where the plaintiff was run over in the night by a freight train running backward, and where the case was taken from the jury.   In reversing the judgment this Court said, "There was no evidence of any signals or warning given of its approach, so that it must be assumed for our purpose that no bells or other signals were given, and no lights shown on the front or any part of the train."   And this presumption in the present case is strengthened by Kenny's testimony that they needed no light for inspection in the car barn but required a lamp when inspecting the cars left on the street.

It was also contended by the appellee that there was no evidence to show how the handle bar was broken, and to permit the jury to assume that it was broken during and by reason of its exposure upon the street after inspection as argued by the appellant would be to permit them to indulge in wild speculation which cannot be made the basis of a verdict.   But we think there is evidence legally sufficient tending to support the plaintiff's theory.   Kenney testifies positively that when he inspected this car at 2.30 A. M. he swung his whole weight upon every handle of the car, and tested this particular handle in that manner, and that it was then in perfectly safe and sound condition.   He also testifies that when he examined this handle the evening after the accident, "the screws looked like it was broke out.   It was not from the pull of the conductor; it was like something had hit it when moving."   This testimony must be taken to be true in passing upon the prayer taking the case from the jury.

The evidence is that but one trip was made to Fort McHenry

and back to Druid Hill Park before the accident happened, that on the down trip the right hand foot-board alone was used by the conductor, while on the return trip the other foot-board alone was used, and that the handle which broke as he was stepping down from the rear platform was then used for the first time that morning; the conductor testified positively that neither upon the run to Fort McHenry nor the return to Druid Hill, was there any collision with his car, nor did it come in contact with anything whatever, and the truth of this testimony must also be assumed. Upon these assumptions, it would follow that the injury to the handle must have been received during its exposure upon the street during the night and after its inspection, though the jury if the case had been allowed to go to them, would not have been bound by any presumption, and could have found that the handle was injured either while on the street during the night, or while on the trip in charge of the conductor and motorman. If the latter, whether by his own negligence, or that of his fellow servant, the motorman, or from some unexplained cause, the master would not be liable. But if the former, the master would be liable, since the injury to the handle could not have occurred but for the negligent exposure of the car upon the street after inspection, and in this view of the case it is not material to know *how* the injury occurred. It would be enough to know that it occurred *during, and because of* such negligent exposure.

Upon principle we think it should have been left to the jury to determine the question of fact, whether the injury to the handle occurred before the plaintiff was assigned to the car, and while negligently exposed upon the street, or after he was placed in charge of it, and we think the authorities sustain this view. In *Smith* v. *N. Y. and Susquehannah R. R.*, 46 N. J. L. 7, where loaded cars set on a side track, and chocked by a tie, escaped on the main track and caused a collision, the question of the company's negligence was held to be for the jury, though there was no proof how the cars escaped.

In *Southern Pacific R. R.* v. *Lafferty, supra,* where engines es-

caped from the yard and ran out on the track causing a collision, the Court said it was for the jury to determine whether reasonable care had been taken to prevent the escape, though there was no evidence of what set the engines in motion, and the Court quoted with approval the following language from *Jones* v. *E., T. V. & G. R. R.*, 128 U. S. 445: "We see no reason, so long as the jury system is the law of the land, and the jury is made the tribunal to decide disputed questions of fact, why it should not decide such questions as these as well as others."

In *Brann* v. *C., R. I. & Pac. R. R.*, 53 Iowa, 595, where the plaintiff was injured by the breaking of a hand hold on a freight car, and the case was taken from the jury in the trial Court, the judgment was reversed, the Court saying, "Can the Court, as matter of law, say, when, where, and how often, inspection shall take place, or that it should not have taken place at some time while the car was under defendant's control? We think not, and that it was a question for the jury."

There is no Maryland case involving the same question here presented, but we think this case comes within the language and reason of *Cooke* v. *Traction Co.*, 80 Md. 558, where this Court said, "Where the nature and attributes of the act relied on to show negligence contributing to the injury, can only be correctly determined by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it, and it is not for the Court to determine its quality as matter of law."

It follows from what we have said that the learned Judge of the Superior Court was in error in granting the defendant's prayers. The plaintiff's prayers are in general accord with the views which we have expressed, but it is unnecessary to prolong this opinion by a critical analysis of them.

The judgment will be reversed with costs to the appellant above and below, a new trial is awarded.

*Judgment reversed.*

(Decided June 21st, 1905.)