## CHESAPEAKE STEVEDORING COMPANY, A Body Corporate, *vs.* LEONARD HUFNAGEL.

*Master and servant: vice-principal and fellow servant. General reputation; proof of——. Evidence: discretion of trial court.*

A master owes to each servant the duty to use reasonable care and caution in the selection of competent fellow servants.

p. 60

A general reputation that a servant is unfit and incapable of discharging duties to which he is assigned, overcomes any presumption that the master exercised due care in his selection.                                                       p. 60

In considering whether or not an employee is a vice-principal or a fellow servant, it is a question, not of comparative rank or authority to command, or to employ and discharge, but of whether the employee is the representative of the master in respect to those obligations which the master can not escape by delegating them.                                        p. 61

Where a foreman, who has the power of a vice-principal, negligently selects and employs an incompetent man as a deckman (or foreman to load a boat), and in consequence of such employment another employee is injured, the master is responsible.                                                p. 63

To prove general reputation as to any particular, the inquiry must be of those among whom the person in question dwells and with whom he is chiefly conversant.                         p. 63

In eliciting testimony and in directing the course of examination, much must be left to the presiding judge, who sees the witnesses, observes their deficiencies, and is in a position to appreciate the force and meaning of their evidence.       p. 64

A trial court may at any time during the trial modify or withdrawn an instruction which it has granted.               p. 64

*Decided February 15th, 1913.*

Appeal from the Court of Common Pleas of Baltimore City (DUFFY, J.).

The plaintiff offered no prayers. The following are the defendant's prayers that were granted:

*Defendant's 3rd Prayer.*—The defendant prays the Court to instruct the jury that if the jury find that the injuries to the plaintiff sued for in this action were caused by the negligence of Charles Sadoski, the deckman, and that said Charles Sadoski was employed and assigned by one John Smith, the foreman of the defendant, to the position above stated on the boat on which the plaintiff was employed, and further find that said John Smith was guilty of negligence in assigning said Charles Sadoski to the position above stated, yet the jury are further instructed that said John Smith and the plaintiff were co-employees of the defendant, and the defendant is not responsible to the plaintiff for the negligence or want of care of the said John Smith unless they shall further find that there was negligence on the part of the defendant in the employing of said John Smith, or his retention in its service, and there is no legally sufficient evidence in the case from which the jury can so find. (*Granted.*)

*Defendant's 7th Prayer.*—The defendant prays the Court to instruct the jury that under the pleadings and the evidence in this case, there is no legally sufficient evidence to entitle the plaintiff to recover under the fourth count of the plaintiff's declaration, and the verdict of the jury must be for the defendant on that count. (*Granted.*)

*Defendant's 8th Prayer.*—The defendant prays the Court to instruct the jury that under the undisputed evidence in this case the employee whose duty, as set out in the first count of the plaintiff's declaration, was to sing out warning before the lowering of a slingload into the hold of the vessel in which the plaintiff was working on or about the 25th day of February, 1911, was a fellow-servant of the plaintiff at the time of the accident set out in said count, and if they find that said fellow-workman was negligent in failing to sing out

and warn the plaintiff, as charged in said first count, and shall find that said failure to warn caused the injuries of which the plaintiff complains, then the plaintiff cannot recover under said first count of his declaration, unless the jury shall further find that the defendant did not use due and reasonable care in the selection or employment of said fellow-workman, or was negligent in retaining said fellow-workman in his service. (*Granted.*)

*Defendant's 9th Prayer.*—The defendant prays the Court to instruct the jury that under the undisputed evidence in this case the employee whose duty, as set out in the second count of the plaintiff's declaration, was to sing out the warning before the lowering of a slingload into the hold of the vessel in which the plaintiff was working on or about the 25th day of February, 1911, was a fellow-workman of the plaintiff at the time of the accident, set out in said count, and if they find that said fellow-workman was negligent in failing to be at his post and in the performance of his duties, as charged in the said second count, and shall find that said negligence caused the injuries of which the plaintiff complains, then the plaintiff can not recover under said second count of his declaration, unless they further find that the defendant did not use due and reasonable care in the selection or employment of said fellow-workman, or was negligent in retaining said fellow-workman in his service. (*Granted.*)

*Defendant's 10th Prayer.*—The defendant prays the Court to instruct the jury that under the undisputed evidence in this case the employee whose duty, as set out in the third count in the plaintiff's declaration, was to sing out a warning before the lowering of the slingload into the hold of the vessel in which the plaintiff was working on or about the 25th day of February, 1911, was a fellow-workman of the plaintiff at the time of the accident set out in said ount, and if they find that said co-worker was negligent in failing to properly warn the said plaintiff, as set out in the said third count of the plaintiff's declaration, and shall find that said failure to properly warn the plaintiff was the cause of the

injuries of which plaintiff complains, then the plaintiff can
not recover under said third count, unless the jury shall
further find that the defendant did not use due and reason-
able care in the selection or employment of said fellow-work-
man, or was negligent in retaining said fellow-workman in
his service.  (*Granted.*)

*Defendant's 13th Prayer.*—The defendant prays the Court
to insrtuct the jury that if the jury shall find from the evi-
dence in this case that the plaintiff did not exercise a reason-
able degree of care and prudence in the performance of the
duties of his position, and in going underneath the open hatch
on the vessel in which he was employed on or about the 25th
day of February, 1911, and that this absence of care and pru-
dence contributed to the accident for which this suit is
brought, then the said plaintiff was guilty of contributory
negligence and the verdict of the jury must be for the defend-
ant.  (*Granted.*)

*Defendant's 14th Prayer.*—The defendant prays the Court
to instruct the jury, notwithstanding that they may find
from the evidence that the negligence of Charles Sadoski,
the deckman, caused the injuries of which plaintiff com-
plains; yet if they find from the evidence that the plaintiff
knew, or by the exercise of ordinary care could have known,
before the accident, for which this suit was brought, that
said Charles Sadoski was incompetent to fill the position of
deckman, and properly perform the duties of said position,
and that he had been assigned to the position of deckman on
the evening of the accident, then their verdict must be for
the defendant.  (*Granted as modified.*)

*Defendant's 16th Prayer.*—The defendant prays the Court
to instruct the jury that they are not to consider any evidence
as to the alleged incompetency or unfitness of Charles Zeg-
arski (or Sadoski), the deckman, to perform the duties of
deckman, except such testimony as bears upon the alleged
failure of the said Charles Zegarski (or Sadoski) to warn the
men in the hold of the steamer on the occasion of the acci-
dent to the plaintiff, of the lowering of the slingload which

caused the injuries to the plaintiff, mentioned in the declaration, or upon the alleged failure of the said Charles Zegarski (or Sadoski) to be at his proper post upon said occasion, and the jury are further instructed to disregard entirely any evidence or testimony reflecting upon the competency or incompetency of the said Charles Zegarski or Sadoski to perform the duties of deckman in other particulars. (*Granted as modified.*) (*Refused after argument.*)

After the prayers were submitted, but before the Court had ruled thereon, the Court asked the plaintiff's counsel, whether they expected to stand on the fourth count; and the plaintiff, in open Court, through his counsel, abandoned the said fourth count.

Judgment being against the defendant on a verdict for $2,000.00, this appeal was taken.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner, Stockbridge and Constable, JJ.

*L. Vernon Miller* and *George Weems Williams,* for the appellant.

*John C. Krumpf* and *David Ash,* for the appellee.

Burke, J., delivered the opinion of the Court.

This an action brought to recover damages for personal injuries received by the appellee, an employee of the Chesapeake Stevedoring Company, a corporation engaged in the business of loading and unloading ships at the port of Baltimore.

The appellee is a stevedore, and on the night of the 25th of February, 1911, while engaged in the performance of his duties in loading a vessel, was severely injured by the act of one of the servants of the defendant dropping upon him through the hatchway of a vessel called the "Sloterdyke," a sling load of flour weighing about eighteen hundred pounds.

The verdict and judgment were in his favor, and the defendant has appealed.

The amended declaration upon which the case was tried contained four counts,—the fourth count, however, was abandoned at the trial. It is unnecessary to set out the allegations of the declaration. It alleged facts sufficient, if proved, to render the master liable for the negligent act of a fellow servant of the plaintiff by which the injuries complained of were occasioned.

On the night the plaintiff was injured, he was working in the hold of the vessel in obedience to the directions of the foreman in charge of the ship. In doing the work assigned him, it was proper for him to stand directly under the hatchway, which occupied a space about eighteen feet wide and thirty feet long, through which the cargo was lowered into the hold from the upper deck. He had charge of a number of men in the hold, and, as he was in a stooping condition laying some boards upon grain in the bottom of the vessel, a sling load of flour was thrown upon him from the upper deck.

The plaintiff offered evidence tending to prove that the man in charge of lowering the cargo into the ship must be a competent and skilful man. He is called a deck man, and one of the witnesses testified, "he is a man who shall be a seaman, and have experience on a vessel, and he has got to take care of twenty-one men. That calls for truckers and slingers and men down in the hold, and at the same time for everybody that is around there. He has to look out for everything that is on the ship, and if anybody comes by he has to keep his eye open because the sling comes around there." The testimony shows that the position of deckman is one of responsibility, and should be filled only by a capable and experienced man. Evidence was offered on behalf of the plaintiff tending to prove that it was the duty of the deckman to stand close to the hatchway when lowering cargo, and to give timely notice or warning to the men below, and further it was his duty to refrain from sending the cargo

down until he had first been notified by the leader of the men in the hold to send it.

On the night preceding the injury to the plaintiff, an experienced man named Lange was in charge as deckman, and the plaintiff thought that he was also in charge at the time of the injury. The deckman in charge, however, at the time the plaintiff was injured was Charles Sadoski, and the slingload which fell upon and injured the plaintiff was the first one lowered that night into the hold of the vessel. There is ample evidence in the record tending to show that the plaintiff's injuries resulted directly from the negligence of Charles Sadoski,—that negligence consisting in his breach of duty in lowering the slingload of flour into the hold without warning or notice of any kind to the plaintiff. There is also evidence in the case from which the jury might have reasonably found that Sadoski was inexperienced and incapable of properly discharging the duties of deckman. The crucial question in the case, which arises upon exceptions to testimony, upon a motion to strike out testimony, and the rulings upon the prayers, is whether the defendant is liable for the negligence of Sadoski, who upon the undisputed evidence, was a fellow servant of the plaintiff. This question, which is not always easy of solution, must be determined by the application to the facts of well settled principles of law. There has been a great multitude of judicial decisions bearing upon this question, and it has been considered in many cases in this Court; but a citation of two cases in which this Court has dealt with the question will be sufficient.

In *Norfolk and Western Railroad Company* v. *Hoover,* 79 Md. 253, it is said: "It has been repeatedly held by this Court, and is the settled and established doctrine of Maryland, that in actions of this character. where a servant sues his master for injuries resulting from the negligence of a fellow-servant, the plaintiff, to succeed, must prove, not only that some negligence of the fellow-servant caused the injury, but also that the master had himself been guilty of negligence, either in the selection of the negligent fellow-servant

in the first instance, or in retaining him in his service afterwards. Mere negligence on the part of the fellow-servant, though resulting in an injury, will not suffice to support the action, because the master does not insure one employee against the carelessness of another. But he owes to each of his servants the duty of using reasonable care and caution in the selection of competent fellow-servants, and in the retention in his service of none but those who are. If he does not perform this duty, and an injury is occasioned by the negligence of an incompetent or careless servant, the master is responsible to the injured employee, not for the mere negligent act or omission of the incompetent or careless servant, but for his own negligence in not discharging his own duty towards the injured servant. As this negligence of a master must be proved, it may be proved like any other fact, either by direct evidence or by the proof of circumstances from which its existence may, as a conclusion of fact, be fairly and reasonably inferred. * * * So the question is, can you fix upon the master a failure to use due care in selecting careful servants by showing such notorious or general reputation respecting the servant's unfitness or incompetency as that the master could not, without negligence on his part, have been ignorant of it when he employed the servant? About this there ought to be no difficulty. If the servant's general reputation before employment is so notorious as to unfitness as that it must have been known to the master, but for his master's negligence in not informing himself—if he could have been ignorant of it only because he failed to make investigation—then, it is obvious that he has not used the care and caution which the law demands of him in selecting his employees. Hence, 'the servant's general reputation for unfitness may be sufficient to overcome the presumption that the master used due care in his selection, even though actual knowledge of such reputation for unfitness on the master's part is not shown' ".

In this case there is evidence of the general reputation of Sadoski for unfitness and incompetency to discharge the duties of deckman. This evidence was, therefore, sufficient to overcome the presumption that the defendant had used due care in selecting him for that work. The record shows that Sadoski was employed and placed in the position of deckman by John Smith, the defendant's foreman, and since the plaintiff and John Smith are fellow-servants, and since there is no evidence that the defendant was negligent in the employment of Smith, it is contended that the plaintiff cannot recover. But we do not regard John Smith as a mere fellow-servant of the plaintiff. JUDGE STOCKBRIDGE in *Frizzell* v. *Sullivan,* 117 Md. 388 said: "The question then arises whether the negligence in this case was the negligence of a fellow-servant, for which the master is not responsible, or whether it was that of a vice-principal rendering the master liable. The difficulty in any given case is to draw the line at which the person whose negligence occasioned the injury ceases to be a co-employee and becomes a vice-principal. The trend of modern authorities is to make "the test of liability, not the safety of the place or appliance at the time of the injury, but the character of the duty the negligent performance of which caused the injury." *Sofield* v. *Guggenheim Smelting Company,* 64 N. J. L. 605. In *Ross* v. *Walker,* in 139 Pa. 42, it is expressed as follows: "When it is sought to hold the master liable for the act or neglect of his foreman, the question to be considered is whether the negligence complained of relates to anything which it was the duty of the principal to do." And in *Southern Indiana Ry.* v. *Harrell,* 161 Ind. 689; 63 L. R. A. 460, it is said: "The controlling consideration in determining whether an employee is a vice-principal is not his comparative rank, or his authority to command or to employ or to discharge, but whether he is the representative of the master in respect to those duties which the master can not escape by a delegation of them."

John Smith, who selected Sadoski as deckman, had the full charge, control, and direction of the vessel on the night the

plaintiff was injured. He employed and discharged the men, and had entire charge and direction of the work, and, as between the parties to this case, he occupied the position of vice-principal, representing the defendant and entrusted by him with the performance of positive and non-delegable duties imposed upon him by law, and for his negligence in the employment of Sadoski as deckman the master is responsible.

Upon the consideration of the whole record, we are of opinion that it discloses evidence tending to establish the following facts: first, that the plaintiff was severely injured; secondly, that his injuries resulted directly from the negligence of Sadoski, the deckman; thirdly, that Sadoski by reason of lack of experience was not a proper person to discharge the duties of deckman; fourthly, that John Smith, the defendant's foreman, was guilty of negligence in the selection of Sadoski, and, being a vice-principal, with respect to that duty, the master is responsible for that negligence. The plaintiff did not know when he was ordered into the hold that Sadoski would be selected as deckman, and he had a right to assume that the master would not select an incompetent man for that position.

At the conclusion of the whole case, the plaintiff offered no prayers; but the defendant submitted sixteen prayers for instruction to the jury. The Court refused its first, second, three and half, fourth, fifth, sixth, twelfth and fifteenth prayers, and modified and granted as modified, its fourteenth and sixteenth prayers, but it subsequently withdrew after argument the sixteenth prayer, being of opinion that that prayer was misleading.

The Court granted the defendant's third, seventh, eighth, ninth, tenth and thirteenth prayers, and the defendant withdrew its eleventh prayer. The reporter is requested to insert these granted prayers in the report of the case.

The defendant's first, three and a half, and twelfth prayers sought to withdraw the case from the consideration of the jury, and for the reasons stated were properly refused.

Its second prayer asserted that there was no legally sufficient evidence to show that the defendant was guilty of negligence in the selection, or the retention of Sadoski, the deckman; and the fourth, fifth and sixth prayers denied the plaintiff's right to recover under the first, second and third counts of the declaration. It follows from what we have said that these prayers were properly refused. Its fifteenth prayer was not based upon the evidence in the case, but it obtained the full benefit of the defense set up by that prayer under its fourteenth prayer which was granted with proper modification by the Court.

The defendant's granted prayers, with such modifications as the Court made, put the case to the jury in the most favorable light for the defendant. We must not, however, be understood as approving the defendant's third prayer. That prayer appears to have ignored the position of John Smith as vice-principal, and to have given the defendant an advantage in the trial to which it was not entitled. The defendant has abandoned its first, fourth, sixth, seventh and tenth exceptions.

The remaining question relates to the refusal of the Court to strike out certain testimony, admitted subject to exception, as to the general reputation of Charles Sadoski for incompetency to discharge the duties of deckman. The evidence of Gustav Reechel on this point is in the record, and was not excepted to, and is that the general reputation of Sadoski was that he was not competent to act as deckman. It must be borne in mind that the plaintiff was not attempting to impeach a witness by proving his general reputation for peace and quiet, truth and veracity, etc. In such cases, as stated in *Greenleaf on Evidence,* 1 Vol., sec. 461: "The inquiry must be made as to his general reputation, where he is best known. It is not enough that the impeaching witness professes merely to state what he has heard 'others' say; for those others may be few. He must be able to state what is *generally said* of the person by those among whom he dwells, or with whom he is chiefly conversant; for it is this only that constitutes his general reputation or character."

The fact sought to be proved in this case was the unfitness of Sadoski to act as a deckman.   This in the very nature of things was not a matter of which the general public was likely to know anything about, and the inquiry to elicit this information must of necessity have been made of those "among whom he dwells or with whom he is chiefly conversant."   These appear to be stevedores, working around the water front, and many of whom appear to be uneducated and unacquainted with our language.   In eliciting the testimony from such witnesses, and in directing the course of the examination much must be left to the presiding judge, who sees the witness, observes his deficiencies, and is in the best position to appreciate the meaning and force of his evidence. The Court ought not for errors in the admission of testimony of this kind reverse the judgment, unless it clearly appears that the defendant has been injured.   We are satisfied after a careful examination of the whole record that the case was fairly tried and submitted to the jury under instructions most favorable to the defendant, and that there are no such errors in the action of the Court either upon the prayers or upon the evidence as would justify us in reversing the judgment.   We have no doubt of the power of the Court to withdraw after argument the sixteenth prayer.   In *United Railways Co.* v. *Carneal,* 110 Md. 211, it is said: "That this Court has frequently said that a judge may at any time during the trial modify his instructions, or revoke them altogether, if convinced of error in a previous ruling."   The sixteenth prayer was clearly wrong, inasmuch as it excluded from the consideration of the jury all evidence as to the incompetency or unfitness of Sadoski, except such as bore upon his alleged failure to warn the men in the hold of the steamer on the occasion of the accident.   There being no reversible errors in the rulings of the Court, the judgment will be affirmed.

*Judgment affirmed, the appellant to pay the costs above and below.*