# F. JARKA COMPANY, INC., *v.* JULIUS GANCL.

*Injury to Employee—Negligence of Foreman—Responsibility of Employer.*

Where an employee of a stevedoring company, while in the hold of a vessel, was injured by the descent of a sling load of potash, which was being transferred from the vessel by a steam winch and cable, *held* that the evidence justified a finding that the accident was due, not to the negligence of the hoisting winchman, but to that of the foreman, in calling away from their duties the side winchman and deckman, the sling load being thus left suspended over the hatchway, into which it descended as the steam became exhausted.          p. 429

The superior rank of an employee whose negligence causes injury to a workman serving under his direction is not decisive as to the employer's liability, the controlling inquiry being whether the authority which was exercised negligently has relation to a duty which the employer was primarily and absolutely obliged to have properly performed.     p. 431

The negligence of the foreman of stevedores, engaged in unloading a vessel, in calling away from their duties one of the winchmen and a deckman, thereby interrupting the further transfer of a sling load of potash previously hoisted from the hold, without adopting any measures to protect those working in the hold against the danger arising from the prolonged suspension of the load, was imputable to the employer, whose obligation to regulate the work in the interest of the workmen's safety was not fulfilled by committing to the foreman's discretion control of the related activities of the various employees.

pp. 431, 432

A stevedore in the hold of a vessel, injured by the unexpected descent of a sling load of material, in course of removal from the vessel, *held* not guilty of contributory negligence as matter of law, in view of his testimony that he was at the time working under another's direction beneath the hatchway.     p. 433

*Decided January 13th, 1926.*

Appeal from the Superior Court of Baltimore City (STEIN, J.).

Action by Julius Gancl against the F. Jarka Co., Inc. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*William L. Marbury, Sr.,* with whom was *L. Wethered Barroll* on the brief, for the appellant.

*James Morfit Mullen,* for the appellee.

URNER, J., delivered the opinion of the Court.

At the trial of this case the defendant corporation asked for a directed verdict in its favor on the ground that there was no legally sufficient evidence of the violation of any legal duty of the defendant towards the plaintiff, its employee, and that the uncontradicted evidence proved the plaintiff to be guilty of negligence directly contributing to the accident and injury which occasioned the suit. The court refused to so instruct the jury, and the defendant's exception to that ruling raises the principal question to be considered on this appeal.

The defendant is a stevedoring company, and was performing a contract to unload a cargo from the German steamship Fuerst Buelow, in the harbor of Baltimore, when a slingload of potash in sacks, which had, been hoisted by a steam winch and cable to the level of the hatchway, in the course of transfer to a scow alongside the vessel, slipped back into the hole and upon the plaintiff, who was one of the defendant's stevedores engaged in the work of removing the cargo. The injuries sustained by the plaintiff were serious, and the jury awarded him six thousand dollars. Before this suit was brought the plaintiff had filed a claim under the Workmen's Compensation Law, but it was disallowed on the ground that the accident was maritime and, hence not within the scope of that statute. This conclusion was induced by the fact that the plaintiff was injured while working on board a vessel in navigable waters. *Atlantic Transport Co. v. Imbrovek,* 234 U. S. 52; *Southern Pac. Co. v. Jensen,* 244 U. S. 205; *State Industrial Accident Commission v. Nordenholt Corp.,* 259 U. S. 263; *Atlantic Coast Shipping Co. v. Royster,* 148 Md. 443; *Taylor v. Ramsay,* 139 Md. 113.

According to the plaintiff's evidence, as one of the first sling-loads of potash was being hoisted from the hole, he and another stevedore in his group were ordered by the tally-keeper to move two boxes which were lying on the bags of potash next to be placed in a sling, and he testified: "Of course we cannot stand there and watch the sling going up.

because while one sling is going up we have to get the hook in the other sling ready so that we will be ready to send the other one up, * * * and when we began to move these boxes, well, this sling came down between myself and my partner who was working there. When it came down on these boxes it struck me right here on the shoulder. * * * I fell on the bags. The sling came down on the boxes and rolled over where I was lying, on me. Everybody began to holler. And then the sling, after hitting the boxes and me, why, was hoisted up, went up." The tally-keeper was described by the plaintiff as a "man whose orders we had to obey." He said that he did not know the tally-keeper's name, but had worked under him a number of times for the defendant.

The sling-load which descended upon the plaintiff had been held by the hoisting winch for a period of approximately ten minutes at the level of the hatch. Upon reaching that level it was ready to be drawn by another winch over the side of the vessel into a position to be lowered into the scow. But the foreman of the gang, engaged in unloading through that hatchway, discovered that the scow was not sufficiently close to the steamer, and he called the side winchman away from his regular post of duty in order to have him assist in pulling the scow nearer to the ship. While this was being done, the sling loaded with potash was suspended over the hatch beneath which the plaintiff was working. It was being held in that position by the hoisting winchman, who thus narrated the facts: "Well, I was hoisting that day, and I lifted a sling load. The deck-man and the other winchman went to place the scow. I held the winch for some ten minutes, possibly longer, and then the winch began to slip away, down. I gave it some steam, and I could not hold it, and it cut down. I mean the load went down to the bottom, and then I heard an outcry downstairs from some people that a man had been hurt. The deck-man came running up. He said, 'Lift the load, because it is down on a man.' All right, I gave it full steam, and then

it came up, the load came up." In describing the operation
of the winch in lifting a load from the hold, he said: "Well,
you throw the lever forward to raise the load, throw the
lever forward, and then turn on the steam, and up she goes.
* * * When the steam is turned on, the cylinder begins to
revolve, the rope turns around the cylinder, and thus raises
the load. * * * You see, this load is pulled up until it
reaches the level of the hatch, and then I have to slack up so
that the other winch can pull it aside."

The stevedore who was engaged with the plaintiff in mov-
ing boxes off the potash at the time of the accident, testified:
"You see, we had sent up that sling, we followed the sling
until it had gotten out of the hatch, and after that we did
not follow it any more, because this conversation about the
boxes ensued. Well, then, having received orders, we both
stooped over to handle the box and began to roll it over,
and the sling came down. I jumped on the side, and the
sling came down on this other fellow."

The contention on behalf of the defendant is that the only
primary negligence proved in the case was that of the hoist-
ing winchman, a fellow servant of the plaintiff, in failing to
check the descent of the load by which the plaintiff was in-
jured. As the load was lifted again as soon as the steam
was fully applied to the winch, it is argued that a similar
application of power would have kept the load from descend-
ing. But it is clear from the winchman's testimony that he
was endeavoring to prevent such a movement. He had held
the load stationary for ten minutes, and when it began to
go down, he turned on more steam in the effort to keep it
suspended. If the foreman had not called the side winch-
man away, the load would have been transferred promptly
to the scow, and the necessity of holding it for a considerable
period above the hatchway would not have existed. The
deckman, whose duty it was to give signals for the opera-
tion of the winches and to direct the movement of the slings
over the side of the ship, was also called to the scow by the
foreman, while the load which injured the plaintiff was being

lifted and held on the cable. Negligence seems to be more reasonably attributable to the foreman, who interrupted the progress of the load after it was lifted from the hold, than to the winchman, who was actively using the means at his command to meet the emergency which the foreman's conduct had created.

The foreman testified that at the time of the accident he had charge of a gang of nineteen men. He sent six of them, including the plaintiff, into the hold, three were on deck, as hoisting and side winchmen and deckmen, and the rest were placed on the scow, where the foreman himself was stationed. There were other gangs employed by the defendant in unloading the vessel, the entire work being in charge of a general superintendent. But the plaintiff's foreman had direct control over the service of his gang, with full power in regard to hiring and discharging its members. In the exercise of the authority conferred upon him by the defendant, he so ordered the activities of his deckman and one of his winchmen as to produce a situation of exceptional and unnecessary hazard for the men of his gang who were at work in the hold of the steamer. If the sling-load in transit had been drawn aside from the hatch opening and deposited on the deck, or if a signal had been given to the hoisting winchman and the men below that the load was to be again lowered into the hold while the scow was being properly moored, the risk of injury to the plaintiff and his companions would have been obviated. But the withdrawal of the deckman and side winchman by the foreman prevented the exercise of such precautions. During the ten minute period of the suspension over the hatchway of the heavily loaded sling, containing sixteen bags of potash weighing two hundred pounds each, the pressure of the steam in the exposed pipes conveying it to the winches probably became reduced, in the winter temperature then prevailing, and thus permitted the downward movement of the load. Undoubtedly the action of the foreman, in diverting the deckman and side winchman from duties upon which depended the normal and safe

performance of the work of unloading the ship, materially increased, for the period of the interruption, the perils of the plaintiff's employment.

The question of law to be determined in regard to this phase of the case is whether the defendant is exempt from liability for the foreman's inferable negligence, on the theory that it was committed by the plaintiff's fellow servant in relation to a duty which the employer could delegate, with consequent freedom from responsibility. The rule in this state is that the superior rank of the employee whose negligence causes injury to a workman serving under his direction is not decisive upon the question as to the employer's liability. The controlling inquiry is whether the authority which was exercised negligently has relation to a duty which the employer was primarily and absolutely obliged to have properly performed. *Chesapeake Stevedoring Co. v. Hufnagel,* 120 Md. 53; *Frizzell v. Sullivan,* 117 Md. 388; *Security C. & L. Co. v. Bowers,* 124 Md. 11; *Penn. Steel Co. v. Nace,* 113 Md. 460; *Bernheimer Bros. v. Bayer,* 108 Md. 551; *Maryland, D. & V. R. Co. v. Brown,* 109 Md. 304; *Crawford v. United Rys. Co.,* 101 Md. 402, 417; *Yates v. McCullough Iron Co.,* 69 Md. 370.

In this case the plaintiff was employed to perform a certain part of the work of unloading the cargo from the hold of a vessel. His service was rendered in the first of the stages of that operation. The regular prosecution of the work, and the plaintiff's personal safety, depended upon the active and continuous discharge by the deckman and winchmen of their important duties. When a sling-load of freight was hoisted from the hold, it was the right of the men working there to assume that the further process of transfer would not be interrupted without proper warning or precautions against the increased dangers to which they might be thereby subjected. The withdrawal of the side winchman made their position more perilous by leaving a load of potash suspended over them for a prolonged period, and the simultaneous absence of the deckman, under the

foreman's orders, left them without the protection which his signals and directions would have afforded.

In *Chesapeake Stevedoring Co. v. Hufnagel,* supra, a stevedore foreman, with authority to hire, discharge, and direct the men engaged in loading a vessel, employed an incompetent deckman who, without warning to the men below, negligently sent a sling-load of flour into the hold, where it fell and injured the plaintiff, who was working under the hatchway. It was held that the foreman was a vice-principal, representing the employer in regard to positive and non-delegable duties, and that for the consequences of the foreman's negligence in selecting a deckman of actual and reputed incompetency the employer was responsible. The negligence imputable to the foreman in the present case was not in the employment of an inefficient deckman, but in diverting the deckman and side winchman from the performance of their regular duties, which were essential to the safety of the men employed below deck in the unloading work then in progress.

This Court said in *Maryland, D. & V. R. Co. v. Brown,* supra, quoting from *Crawford v. United Rwys. Co.,* 101 Md. 417, that "when the business of the master is such that the safety of one servant depends upon the way in which other servants do their work, it is the duty of the master to adopt, promulgate and enforce reasonable and sufficient rules to protect and promote the safety of its employees exposed to danger." There does not appear to have been any rule prescribed by the defendant for the protection of its employees from increased hazards caused by accidental or directed interruptions of the unloading operations. The defendant's obligation to regulate the work in the interest of the workmen's safety should not be judicially declared to have been fulfilled because the control of the related activities of the various employees was committed to the foreman's discretion. In refusing to instruct the jury that there was no legally sufficient evidence of any violation by the defendant of any duty to the plaintiff, the trial court committed no error.

The testimony on behalf of the plaintiff, though contradicted in certain particulars, prevents a decision that the case should have been withdrawn from the jury on the ground that he was guilty of contributory negligence. There is no evidence that he knew of the temporary withdrawal of the deckman and side winchman from their usual duties, or that he had any reason to anticipate the return into the hold of the sling-load which had just been hoisted. He was aware that some of the contents of a sling might drop from it, if not properly secured, but the accident did not result from such a cause. It was testified by the plaintiff, in effect, that while one sling was going up another had to be prepared, and that at the time of the accident he was moving some boxes under the hatchway by special order of the defendant's tally-keeper, who was exercising an apparent authority which he had previously used for similar purposes. It was denied by witnesses for the defendant that its tally-keeper was present in the hold of the vessel when the accident occurred, or gave the order in regard to which the plaintiff testified. But this conflict in the evidence raised an issue which it was the function of the jury to determine. A motion to strike out the plaintiff's testimony as to the tally-keeper's duties and orders was properly overruled.

In disposing of this case we do not find it necessary to decide the question, which was discussed by counsel, as to whether the principles of admiralty law are applicable in this common law action for a maritime injury, and whether they would preclude to any extent the use of the fellow servant and contributory negligence doctrines for the purposes of the defense.

The appellant has waived the exceptions in the record to rulings other than those to which we have specially referred.

*Judgment affirmed, with costs.*