# RICHARD G. SCHATZ, ETC. ET AL. v. YORK STEAK HOUSE SYSTEMS, INC.

[No. 840, September Term, 1981.]

*Decided May 5, 1982.*

The cause was argued before THOMPSON, LISS and COUCH, JJ.

*John C. Evelius* for appellants.

*Daniel J. Moore,* with whom were *James D. Peacock* and *Semmes, Bowen & Semmes* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Appellant Kimberly Schatz, the seventeen-year-old daughter of Richard and Dawn Schatz, also appellants, was employed as a waitress by the York Steak House Systems, Inc., the appellee, at its Westview Mall restaurant in Baltimore County, Maryland. On the evening of July 10, 1980, she was at her employer's restaurant performing her regular duties during her scheduled work hours, i.e., assisting with the preparations for the nightly closing. While performing these duties she was raped by James Leslie, the assistant manager at York's Westview Restaurant. As an assistant manager, he was responsible for preparing the restaurant for lunch, removing frozen food from the freezers, checking the table setups, readying cooking utensils and equipment, and opening and closing the restaurant. There was evidence that Leslie had the authority to fire waitresses; however, his responsibilities did not include the authority to enter into contracts or agreements. He was not a director, officer or shareholder of York. He was one of 119 assistant managers employed by York nationwide. His services were terminated as a result of the rape.

Miss Schatz brought suit to recover for her physical and psychological injuries. Her parents joined in the suit to recover medical bills and loss of filial companionship of their

daughter. Judge John E. Raine, Jr., of the Circuit Court for Baltimore County granted York's motion for summary judgment on the basis that recovery by the employee or her parents was limited to that provided in the Workmen's Compensation Law with which York had fully complied.

## I

Miss Schatz contends that she is entitled to elect to receive the benefits of the Maryland Workmen's Compensation Act or to proceed with this suit at common law under Md. Code Art. 101, § 44 which provides as follows:

> "If injury or death results to a workman from the deliberate intention of his employer to produce such injury or death, the employee, the widow, widower, child, children or dependents of the employee shall have the privilege either to take under this article or have cause of action against such employer, as if this article had not been passed."

She maintains the trial judge erred in entering summary judgment because there was a dispute as to whether Leslie was a vice-principal. She relies on several Maryland cases which define a vice-principal as a fellow servant who exercises some recognized common law non-delegable duty of the master. *Wood v. Abell,* 268 Md. 214, 300 A.2d 665 (1973); *Jarka Company v. Gancl,* 149 Md. 425, 131 A. 754 (1926); *Ches. Stevedoring Co. v. Hufnagel,* 120 Md. 53, 87 A. 4 (1913); *Frizzell v. Sullivan,* 117 Md. 388, 83 A. 651 (1912).

Whether assistant manager Leslie was or was not a vice-principal is irrelevant in view of the intentional nature of his acts. The cases cited by the appellant hold that an employer can be liable for the *negligent* acts of a vice-principal, a theory premised on an application of the principles of vicarious liability to workplace accidents. No Maryland court has held that the *intentional* acts of a vice-principal can be attributed to the employer. The majority of jurisdictions that have considered the question have held that absent express authorization by the employer, the agent

must be the "alter ego" of the employer in order for his intentional misconduct to be attributed to the employer. See, *Jablonski v. Multack and Max Lee Corp.,* 63 Ill.App.3d 908, 380 N.E.2d 924 (1978); *McGrew v. Consolidated Freightways, Inc.,* 141 Mont. 324, 377 P.2d 350 (1963); *Bryan v. Utah International,* Utah, 533 P.2d 892 (1975). The rationale of these decisions has been succinctly expressed by Professor Larson, in *The Law of Workmen's Compensation,* § 68.21 (pp. 13:10-11 1976) in which he said:

> "When the person who intentionally injures the employee is not the employer in person nor a person who is realistically the alter ego of the corporation, but merely a foreman, supervisor or manager, both the legal and the moral reasons for permitting a common-law suit against the employer collapse, and a substantial majority of modern cases bar a damage suit against the employer.
>
> The legal reason for permitting the common-law suit for direct assault by the employer, as we have seen, is that the same person cannot commit an intentional assault and then allege it was accidental. This does not apply when the assailant and the defendant are two entirely different people. Unless the employer has commanded or expressly authorized the assault, it cannot be said to be intentional from his standpoint any more than from the standpoint of any third person. Realistically, it to him is just one more industrial mishap in the factory, of the sort he has a right to consider exclusively covered by the compensation system." (footnote omitted)

We find this reasoning more compelling than the assertions of the appellants that the intentional act of a vice-principal should be imputed to the employer even though it was committed contrary to the wishes of the employer.

In view of the intentional misconduct by the assistant manager, the trial court properly focused upon whether he could be characterized as an alter-ego of his employer and

not upon whether he fit within the common law concept of a vice-principal. On these questions there is no dispute as to the facts, thus, there was no error in the granting of summary judgment.

## II

Miss Schatz also contends that the injuries resulting from rape are not covered by Workmen's Compensation because they did not arise out of her employment. The precise argument is that the words "third person" contained in Md. Code Art. 101, § 67 (6) does not include a fellow employee. That section provides as follows:

"... only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally result therefrom, including frostbite and sunstroke resulting from weather condition, occupational disease and includes an injury caused by the wilful or negligent act of a third person directed against an employee in the course of his employment."

She contends that inasmuch as three Maryland cases discuss the existence of coverage for employees injured by third persons who were not employees, the Act excludes co-employees as third persons. See, *Edgewood Nursing Home v. Maxwell,* 282 Md. 422, 384 A.2d 748 (1978); *Giant Food v. Gooch,* 245 Md. 160, 225 A.2d 431 (1967); *Smith v. General Mot. Assemb. Div.,* 18 Md. App. 478, 307 A.2d 725 (1973). Appellant urges, "None of these cases involved a co-employee, and there is nothing in the language of the opinions to indicate that the definition of a 'third person' would include a co-employee." In making this argument the appellant ignores the *dicta* in *Zentz v. Peters & Taylor, Inc.,* 11 Md. App. 1, 272 A.2d 430 (1971) and other provisions of the Act which set forth a clear indication that the term "third person" encompasses a co-employee. In *Zentz,* an employee was injured in a fight at work with a co-employee. This court affirmed the denial of compensation benefits to

the appellant, finding that the injury was proximately caused by intoxication. The appellant had argued, *inter alia,* that the lower court erred in failing to find that the employee's injuries were compensable under § 67 (6) of the Act. Although we did not expressly hold that a co-employee was a third person for purposes of § 67 (6), such conclusion finds support in *dicta,* since application of the intoxication exclusion presupposes that the injury sustained was otherwise compensable. Such interpretation was made by the District of Columbia Court of Appeals in *Decius v. Marriott Corp.,* 402 A.2d 841 (1979). That court, construing Maryland law, expressly held that a co-employee was a third person under § 67 (6). The court, citing *Zentz,* stated at 844:

"[C]o-employees have been held to be 'third persons' for the purposes of the term 'willful or negligent act of a third person directed against an employee in the course of his employment.' *Zentz v. Peters & Taylor, Inc.,* 11 Md. App. 1, 272 A.2d 430 (1971)."

It appears that the Act itself provides authority for a finding that a co-employee is a "third person." Section 58 codifies the injured employee's right to proceed at law against any third person who causes the injury and gives the payor of compensation benefits a right of subrogation against such a third person. This section defines "third person" as anyone who is neither the employer nor the injured employee.[1] Inasmuch as provisions of the Act should be construed together, "third person" should be given the same construction throughout. *Subsequent Injury Fund v. Chapman,* 11 Md. App. 369, 274 A.2d 870, aff'd. 262 Md. 367 (1971). We conclude that the definition of third person encompasses a co-employee of the injured worker.

---

1. Art. 101, § 58 provides, in pertinent part:

"Where injury or death for which compensation is payable under this article was caused under circumstances creating a legal liability in *some person other than the employer* to pay damages in respect thereof, the employee ... may proceed either by law against that other person to recover damages or against the employer for compensation under this article, or in the case of joint tortfeasors against both;" (emphasis added)

## III

The appellants Richard and Dawn Schatz assert a separate claim for medical expenses incurred on behalf of the daughter as the result of the rape. Those injuries, as we have indicated, are covered by the Workmen's Compensation statute which is exclusive; therefore, the trial judge was quite proper in granting a summary judgment for the defendant. See Md. Code Art. 101, § 15.

The parents also assert a claim for loss of filial companionship as a result of their daughter's rape. The Court of Appeals in *Deems v. Western Maryland Ry.,* 247 Md. 95, 114, 231 A.2d 514, 525 (1967) expressed a reluctance to expand a married couple's right of recovery for loss of consortium to encompass recovery rights for the emotional injuries suffered by other family members. The court stated:

> "Under the [legal entity] concept, there is not involved the possible right of other members of the injured person's family to recover for intangible losses, with possible inordinate expansion of a defendant's liability for damage resulting from his negligence; the right is confined to injury to the joint relational interest of the spouses."

In the face of such a strong statement by the Court of Appeals we would be most reluctant to expand claims for filial companionship even if we were inclined to do so, which we are not.[2]

*Judgment affirmed.*
*Appellants to pay the costs.*

---

2. The Act would bar filial claims if any existed.