**Evora A. ROBINSON**

v.

**VITRO CORPORATION, et al.**

**Civ. A. No. N–85–2672.**

United States District Court,
D. Maryland.

Oct. 10, 1985.

David L. Moore, Marianna I. Burt, and Kenneth C. Montague, Baltimore, Md., for plaintiff.

George W. Johnston, Peter S. Saucier, and Venable, Baetjer & Howard, Baltimore, Md., for defendants.

## MEMORANDUM

NORTHROP, Senior District Judge.

Plaintiff filed suit in this Court on June 24, 1985, against her former employer (Vitro) and fellow employee (Ortega). She alleges that the defendants committed various acts against her, including employment discrimination and retaliatory discharge, in violation of 42 U.S.C. § 1981, and pendent state claims of false light invasion of privacy, and intentional infliction of emotional distress.[1] The defendants timely moved for dismissal, or in the alternative for summary judgment, on all the claims. After reviewing the pleadings and affidavits, the Court concludes that no hearing is necessary for decision in this matter. Local Rule 6, D.Md. For reasons hereinafter set forth, the motion is granted in part and denied in part.

## FACTS

The plaintiff, Evora A. Robinson, began working for the defendant, Vitro Corporation ("Vitro") on or about January 15, 1979. Her principal responsibility was that of a projectionist, and as such, she made audiovisual presentations to various groups assigned to her by her supervisors. The plaintiff contends that during her employment with Vitro, she was on numerous occasions required to make visual presentations to a group of people headed by Frank Ortega, and that each time she made a presentation before Mr. Ortega, he unfairly complained about her work to her supervisor, making racially derogatory remarks in the process. Ms. Robinson asserts that upon consulting with her supervisor about Mr. Ortega's conduct, the supervisor alerted the employee relations office and Vice President of Industrial Relations to the fact that Ms. Robinson was being subjected to racially motivated harassment. Despite this notice, the company did nothing to terminate Ortega's conduct.

Ms. Robinson filed charges of race, sex and age discrimination with the Maryland Human Relations Commission on March 20, 1984. That charge is still pending before the Commissioner. The plaintiff was subsequently notified on May 21, 1984 that she was being laid off as part of a reduction in force effective June 1, 1984, and in fact did end her employment with Vitro on that date.

---

1. The parties are in dispute over the existence of other possible claims. The defendants assert that the plaintiff attempted to bring actions solely under the Thirteenth and Fourteenth Amendments to the United States Constitution. The plaintiff, in her memorandum in opposition to dismissal, has indicated no such intent. The Court finds that the complaint could be read to infer such an allegation, but that any such claims must be dismissed under FED.R.CIV.P. 12(b)(6). The parties are additionally in conflict over whether the plaintiff has alleged defamation. The plaintiff, in her memorandum, indicates that she made no such allegation. The Court rules without further discussion that any action for defamation is hereby dismissed, since any defamation must have occurred outside the one-year statute of limitations. MD. [CTS. & JUD.PROC.] CODE ANN. § 5–105. In addition, the plaintiff, in her memorandum, has outlined an argument in favor of a claim for abusive discharge. Upon careful reading of the complaint, however, the Court finds no such claim. Therefore, no discussion on the matter or ruling will be considered by the Court.

For purposes of clarity, the Court will deal with each of defendants arguments separately.

## I. *Specificity of Pleading under Federal Rule 8(a)(2)*

■ The defendants first argue that the entire complaint lacks the specificity required by FED.R.CIV.P. 8(a)(2) and, therefore, should be dismissed. They contend that since the complaint fails to identify sufficient dates, witnesses, and surrounding facts, the defendants are unable to respond effectively to the allegations. While the Court notes that the complaint is not replete with specific information regarding each count, it does adequately inform the defendants of the nature and basis of the complaint. The complaint clearly states the following: Throughout the plaintiff's employment, defendant Ortega constantly complained about Ms. Robinson's work to her supervisor; these criticisms were unfounded and motivated by racial prejudice; Ortega claimed that Ms. Robinson was deficient because she was black; Ortega called her "Nigger" in the presence of others; even after the defendant Vitro learned of the wrongful conduct by its employee Ortega, it failed to take any action to stop the abuse and harassment directed toward the plaintiff.

Federal Rule of Civil Procedure 8(a) does not require that a claimant set forth in detail all the facts upon which she bases her claim. The rule simply requires a short and plain statement of the claim that will give the defendant notice of the nature of the claim and its grounds. The opportunity for discovery will enable the defendant to ascertain additional necessary facts. *Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957). In *Conley,* the court succinctly ruled that "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45–46, 78 S.Ct. at 101–102.

## II. *The Statute of Limitations under § 1981*

The defendants have requested the Court to dismiss all claims of discrimination resting upon 42 U.S.C. § 1981. They contend that the plaintiff's complaint does not identify specific dates upon which the alleged discriminatory conduct took place. Since the applicable statute of limitations for a § 1981 suit is three years and all but the last three months of plaintiff's employment is barred by limitations, then the claim should be dismissed as a matter of law.

■ The defendants correctly have identified the applicable three-year statute of limitations. *Burnett v. Grattan*, 468 U.S. 42, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984). However, the plaintiff has asserted in her complaint that acts of racial discrimination occurred all throughout her employment with the defendant company. The plaintiff was employed by Vitro from January 15, 1979 until June 1, 1984. Therefore, the Court is not prepared to rule at this time that none of the alleged racially discriminatory acts occurred within three years prior to her filing suit.

## III. *Retaliatory Discharge under § 1981*

■ As further grounds for dismissal, the defendants argue that the plaintiff may not maintain a § 1981 cause of action based on retaliation for filing a Title VII charge. The Court, however, disagrees and adopts the position in *Evans v. Chesapeake & Potomac Tel. Co. of Maryland,* 518 F.Supp. 1074 (D.Md.1981). Judge Miller ruled that when a plaintiff has alleged that an employer has taken retaliatory measures against an employee because the employee has filed Title VII charges alleging racial discrimination, then the plaintiff presents a cognizable claim for retaliation under 42 U.S.C. § 1981.

If an employer retaliates against the former employee with the intent to perpetuate the original act of discrimination, or with some other racially discriminatory motive in mind, then interference with

rights protected by § 1981 has occurred, and that section must come into play. *Id.* at 1078.

In the present case, Ms. Robinson asserts that she was discharged as a result of her filing a claim of racial discrimination with the Maryland Commission on Human Relations. She has thus satisfied the elements of a retaliation claim under § 1981.

■ The defendants next contend that the claim of retaliation must be rejected because the decision to lay off Ms. Robinson occurred before the defendant learned of her filing charges.[2] Ms. Robinson, however, has asserted in her complaint as well as her affidavit that she filed her complaint with the Maryland Human Relations Commission on March 20, 1984, and on May 21, 1984, she was notified of her impending lay-off. Her complaint states that her discharge was due to "ill will towards the plaintiff in retaliation against her for filing her complaint." Plaintiff's Complaint at 7–8. If this allegation were proven, it would certainly support a decision in her favor for retaliatory discharge under § 1981. Therefore, the Court cannot rule with certainty that Ms. Robinson's termination from Vitro was unrelated to her filing charges with the Maryland Commission. Discovery will be most helpful in ascertaining when Vitro first learned of her claim with the Maryland Commission.

### IV. *False Light Invasion of Privacy*

The defendants assert two grounds for dismissing the false light invasion of privacy claim. First, they contend that the complaint does not satisfy the elements of the tort; secondly, they argue that the claim is barred by the statute of limitations.

■ False light invasion of privacy requires publicity. The Court of Appeals of Maryland in *Hollander v. Lubow*, 277 Md.

47, 57, 351 A.2d 421, 426 (1976), *cert. denied,* 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976) held: "The disclosure of the private facts must be a public disclosure, and not a private one; there must be, in other words, publicity...." The tort is distinguished from defamation which requires only publication, and can be completed upon communication to only one person. The defendants contend that the plaintiff's pleading fails to allege the requisite publicity, but, at this point, the record remains unclear as to the extent of any disclosure. The complaint simply states that defendant Ortega made his remarks in the presence of others. Hence, dismissal of the claim is premature.

■ In addition, the defendants state that any claim of false light invasion of privacy in now barred by the statute of limitations. Although the Maryland Court of Appeals has yet to rule on the applicable period of limitations for this tort, the Court concurs with Judge Miller of this District when he held in *Smith v. Esquire*, 494 F.Supp. 967, 970 (D.Md.1980) (Miller, J.) that the applicable time of limitations for false light invasion of privacy is one year. The Court agrees with Judge Miller's reasoning that the tort of false light invasion of privacy is so similar to defamation that the one-year statute of limitations governing defamation is to be applicable in false light cases as well. As Judge Miller stated: "To hold otherwise would severely undercut the policy considerations which led to the enactment of the one-year statute governing defamation cases." *Id.* at 970. The plaintiff alleges in her complaint that the false light invasion of privacy occurred during her employment at Vitro. She ended her working relationship with the defendants on June 1, 1984. Since her complaint was not filed with the Court until

2. The defendants have asserted in their memorandum in support of dismissal that Vitro had decided to lay off Ms. Robinson on or about April 25, 1984 and that the company received notice of Ms. Robinson's charges by mail from the Commission on May 10, 1984. Thus, the decision to lay off the plaintiff could not have been motivated by any desire to retaliate. The argument, however, rests on the assumption that Vitro could only have learned of Ms. Robinson's Title VII action by mail from the Commission itself. The Court cannot accept this assumption with legal certainty.

June 24, 1985, the claim of invasion of privacy is untimely and will be dismissed.

### V.  *Intentional Infliction of Emotional Distress*

■ The plaintiff has alleged that during her years of employment with the defendant, Vitro, the defendant Ortega subjected her to derogatory and disparaging remarks about her race and intelligence.  The complaint further states that despite Vitro's knowledge of the harassment, the company failed to take appropriate action.  As a result of the defendants' conduct, Ms. Robinson has suffered great emotional distress, mental pain, anguish, and irreparable harm.  The defendants counter by suggesting that even if all the allegations are true, the complaint fails to allege conduct sufficient to be considered "extreme and outrageous" as required by the tort.  In *Dick v. Mercantile Safe Deposit & Trust Co.*, 63 Md.App. 270, 275–76, 492 A.2d 674, 677 (1985), the intermediary court approved the language of comment I to § 46 Restatement (Second) of Torts.

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable.  [Liability does not extend, however] to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities.  The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. . . .

While the Court does recognize the language cited in *Dick*, it is not prepared to state at this time that the complaint as a matter of law lacks sufficient allegations to establish the requisite extreme and outrageous conduct necessary for the tort.  Discovery will be helpful to ascertain the extent, magnitude and severity of the defendants' alleged racial harassment.

■ Next, the defendants argue that notwithstanding the establishment of a claim for intentional infliction of emotional distress, such claim must be dismissed as to defendant Vitro because the Maryland Workers' Compensation Act provides the exclusive remedy for that claim.

In *Schatz v. York Steak House Sys.*, 51 Md.App. 494, 444 A.2d 1045 (1982), the Maryland Court of Special Appeals ruled that employees are not subject to vicarious liability for intentional torts committed by their servants.  "No Maryland court has held that *intentional* acts of a vice-principal can be attributed to the employer.  The majority of jurisdictions that have considered the question have held that absent express authorization by the employee, the agent must be the 'alter ego' of the employer in order for his intentional misconduct to be attributed to the employer."  *Id.* at 496–97, 444 A.2d at 1047.  It is true that there is nothing in the complaint to suggest that Mr. Ortega held a position so important in the Vitro Company to infer that he acted as the alter ego of the company.  However, the complaint, together with Ms. Robinson's affidavit, clearly suggests that various persons in the company intentionally disregarded Ms. Robinson's protestations and therefore directly participated in the wrongful conduct.  The question which remains, and cannot be resolved at this time, is whether Ms. Robinson's immediate supervisor, the employee relations office of Vitro, or the Vice President of Industrial Relations, all of whom, according to Ms. Robinson, learned of Mr. Ortega's conduct, had sufficient authority to be considered the alter ego of the defendant Vitro.

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered forthwith if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The movant bears the burden "to demonstrate clearly that there is no genuine issue of fact, and any doubt as to the existence of such an issue is resolved against him."  *Phoenix Savings and Loan, Inc. v. Aetna Casualty & Sure-*

ty Co., 381 F.2d 245, 249 (4th Cir.1967); accord *Cole v. Cole*, 633 F.2d 1083, 1089–91 (4th Cir.1980); 10A C. Wright and A. Miller, *Federal Practice & Procedure: Civil*, § 2727 (1983). With this principle in mind, the Court must rule against the motion for summary judgment on the basis of worker compensation exclusivity.

The Court rules against dismissal against defendant Ortega because the Maryland Workmen's Compensation Law contains no exclusivity rule for tort actions between employees. *Hutzell v. Boyer*, 252 Md. 227, 249 A.2d 449 (1968).

Finally, the defendants have asserted that any claim for intentional infliction of emotional distress is barred by limitations.

MD. [CTS. & JUD.PROC.] CODE ANN. § 5–101 states that Maryland subscribes to a three-year limitation unless another provision of the Code provides a different period of time within which an action shall be commenced. Section 5–105 does mandate a one-year limitation of action for assault, battery, libel, or slander.

The defendants suggest that the tort of intentional infliction of emotional distress is so closely analogous to the torts enumerated in § 5–105 that the Court should apply the one-year limitation for this tort. The defendants further contend that this Court should apply the same rationale as did Judge Miller in *Smith v. Esquire* in which Judge Miller held that the one-year statute of limitations under § 5–105 was to be extended to false light invasion of privacy because of its close similarity to libel and slander. While this Court concurs with the holding in *Smith*, it does not believe that the tort of intentional infliction of emotional distress is so closely analogous to that of assault as to warrant inclusion under § 5–105.

An assault is any unlawful attempt to cause a harmful or offensive contact with the person of another or to cause apprehension of such a contact. *Continental Cas. Co. v. Miralile*, 52 Md.App. 387, 398, 449

A.2d 1176, 1183. The tort of assault is designed to protect a person's interests to be free from apprehension of intentional physical contact.

On the other hand, the tort of intentional infliction of emotional distress was recognized to protect persons from any extreme and outrageous conduct calculated to cause serious mental distress. *Harris v. Jones*, 281 Md. 560, 564, 380 A.2d 611, 613, 86 ALR 3d 441 (1977). The interests being protected are thus distinct.

In *Stewart v. Thomas*, 538 F.Supp. 891 (D.D.C.1982), Judge Green of the District Court for the District of Columbia dealt with the same issue and found that the tort of intentional infliction of emotional distress was not to be included among the torts enumerated in the D.C.Code having a one-year statute of limitations (libel, slander, assault, battery, mayhem, and false imprisonment). The Court agrees with that holding.[3]

MD. [CTS & JUD.PROC.] CODE ANN. 5–101 states that "A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which such an action shall be commenced." The Maryland Court of Appeals has further cautioned that "where the Legislature has not made an exception in express words in the Statute of Limitations, the Court cannot allow any implied and equitable exception to be engrafted upon the Statute merely on the ground that such exception would be within the spirit or reason of the statute." *McMahan v. Dorchester Fert. Co.*, 184 Md. 155, 160, 40 A.2d 313, 316 (1944).

The Court therefore concludes that it lacks sufficient reason for engrafting the tort of intentional infliction of emotional distress onto MD. [CTS. & JUD.PROC.] CODE ANN. § 5–105.

## VI. *Staying the Action*

The defendants contend that since the basis of the plaintiff's complaint is that

---

**3.** In *Hector v. Weglein*, 558 F.Supp. 194, 207 n. 7 (D.Md.1982) (Kaufman, C.J.), Chief Judge Kaufman of this District suggested *in dicta* that in Maryland, the torts of false imprisonment and malicious prosecution appeared to be subject to the general three-year limitations period provided by MD. [CTS. & JUD.PROC.] CODE ANN. 5–101.

she suffered discriminatory treatment while employed at Vitro, and since this is the same issue which she has brought before the Maryland Commission on Human Relations, it would be logical, efficient and economical to allow the Commission first to address, investigate and, hopefully, to conciliate her complaint.

Although the plaintiff opposes such a stay on the grounds that such a stay would be prejudicial to her case, the Court is persuaded by the possible benefits of such a stay, and on balance finds that the potential advantages of allowing the Human Relations Commission to complete its investigative and concliatory function far exceeds any potential prejudice to the plaintiff.

### VII. *Attorney's Fees*

Finally, the plaintiff has claimed attorney's fees for her § 1981 actions, as permitted under 42 U.S.C. § 1988. The Court concludes that there is little justification for permitting the award of attorney's fees at this time. Therefore, the request will be denied pending litigation on the merits of the § 1981 claim.

A separate Order will be entered confirming the rulings made herein.